STATE of Tennessee, Petitioner,

v.

James HENDERSON, Respondent.

Supreme Court of Tennessee.

May 9, 1977.

Petition to Rehearing Aug. 15, 1977.

Robert A. Grunow, Asst. Atty. Gen., Brooks McLemore, Atty. Gen., State of Tenn., Nashville, for petitioner.

Edwart Witt Chandler, Emmons, Smith, & Chandler, Memphis, for respondent.

## OPINION

COOPER, Chief Justice.

Certiorari was granted in this case to determine whether the admission in evidence of toxicology laboratory reports, through a witness other than those that performed the tests, violated respondent's constitutional right to confrontation. A divided Court of Criminal Appeals held that it did, reversed the conviction, and remanded the case for a new trial. We affirm its action.

The record shows that the Henry County Grand Jury, at its January, 1975, Term, returned two indictments against James Henderson. In one, Mr. Henderson was charged with possession of LSD with intent to manufacture, deliver, distribute, sell, and with the sale of LSD. The other indictment charged Mr. Henderson with the possession of marijuana with the intent to manufacture, deliver, distribute, or sell, and the sale of marijuana.

On trial, the jury found Mr. Henderson guilty as charged in the indictments, and assessed his punishment at imprisonment in the state penitentiary for not less than five years nor more than six years under the LSD indictment, and imprisonment in the state penitentiary for not less than one nor more than two years on the conviction under the marijuana indictment. The trial

judge ordered the sentences to run concurrently.

It is uncontradicted in the record that Mr. Henderson sold a state agent the substances that were the predicate of the indictments returned by the Henry County Grand Jury. After purchase, the substances were sent to the State Toxicology Laboratory in Memphis, Tennessee, for testing. The result of the tests is the only evidence in the record that the substances Mr. Henderson sold the undercover agent were contraband.

At the time of trial, the laboratory assistants who conducted the tests to determine the nature of the substances were on vacation and temporarily were not available to testify. In the absence of these witnesses the trial court permitted the test results to be introduced in evidence as an exhibit to the testimony of Dr. David Stafford, the director.[1] Respondent objected to the introduction of the laboratory reports, contending that the reports violated the rule against hearsay and violated his constitutional right to confront the witnesses against him.

In holding that the trial judge was in error in admitting the reports in evidence, the majority of the Court of Criminal Appeals, in an opinion authored by Judge Daughtrey, had the following to say:

"The reports were clearly hearsay, constituting as they did out-of-court statements offered to prove the truth of the matters contained therein. McCormick, Evidence § 246 (2d ed. 1972); Paine, Tennessee Law of Evidence § 47 (1974). The basis upon which the trial judge nevertheless determined them to be admissible is not altogether clear from the record. Dr. Stafford was asked whether the tests were run under his supervision, whether they were conducted as normal procedure, and whether the results were 'certified' by him. He replied that the reporting analysts worked under his supervision, but that the tests had not been conducted within his eyesight. He confirmed the fact that the results had been 'certified' by him. However, the 'certification' appears to carry only a rubber-stamped signature under the statement, 'I certify and attest that this document is the proper record it purports to be.' There is no indication that the results of the tests were personally verified by the certifier nor that by his certification he endorsed the conclusions reached by the reporting analysts. Compare, State v. Kreck, 86 Wash.2d 112, 542 P.2d 782, 784 (1975).

"These records may well come within the so-called business records exception to the hearsay rule, codified under Tennessee law as T.C.A. § 24–714, but this would satisfy only the threshold inquiry. The second and crucial question is whether the introduction of the laboratory reports in such circumstances violates the federal constitutional right of confrontation embodied in the Sixth Amendment, Pointer v. Texas, 380 U.S. 400, [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965), and the right guaranteed every criminal defendant under article 1, Section 9 of the Tennessee Constitution 'to meet the witnesses face to face.' See generally, Phillips v. Neil, 452 F.2d 337, 344 (6th Cir. 1971), cert. denied 409 U.S. 884, [93 S.Ct. 96, 34 L.Ed.2d 141] (1972); United States v. Lipscomb, 435 F.2d 795, 802 (5th Cir. 1970), cert. denied 401 U.S. 980, [91 S.Ct. 1213, 28 L.Ed.2d 331] (1971).[2] We conclude that such a violation has occurred in this case.

"Initially it must be conceded that while the rule against hearsay and the right of the criminal defendant to confront the witnesses against him share common historical

---

1. Dr. Stafford testified he had not personally supervised the tests and had no independent knowledge of the nature of the substances tested.

2. The cases from other jurisdictions have gone both ways on constitutional questions involving the business record exception to the hearsay rule. See generally, Binder, the Hearsay Handbook 8–9, (1975). The Michigan courts, for example, long held that the Business Records Act was not applicable in criminal cases because of the constrictions of the Confrontation Clause. See, e.g., People v. Lewis, 294 Mich. 684, 293 N.W. 907 (1940), criticized but followed in People v. Gauthier, 28 Mich.App. 318, 184 N.W.2d 488 (1971), overruled in People v. Kirtdoll, 391 Mich. 370, 217 N.W.2d 37 (1974).

roots, in that both recognize the right of cross-examination to be foremost among the safeguards essential to a fair trial, the Confrontation Clause has never been interpreted to bar all hearsay evidence in a criminal trial. For example, the dying declaration exception to the hearsay rule was recognized under the common law even before the Sixth Amendment was adopted. See *e.g., Mattox v. United States,* 146 U.S. 140, 151–52, [13 S.Ct. 50, 36 L.Ed. 917] (1892). Similarly, as the law of evidence developed, other hearsay exceptions have passed constitutional muster despite the existence of the Confrontation Clause, *e.g.,* prior testimony of a subsequently deceased witness, as in *Mattox v. United States,* 156 U.S. 237 [15 S.Ct. 337, 39 L.Ed. 409] (1895). *Accord, Stubbs v. State,* 216 Tenn. 567, 393 S.W.2d 150 (1965), *approved in Mancusi v. Stubbs,* 408 U.S. 204 [92 S.Ct. 2308, 33 L.Ed.2d 293] (1972) (prior witness now residing permanently out of country); *cf. Hall v. State,* 65 Tenn. 522 (1873) and *Hicks v. State,* 490 S.W.2d 174 (Tenn.Crim.App. 1972) (prior witness residing out of state).

"On the other hand, the United States Supreme Court has made it abundantly clear that the two rules are not coterminous. *Dutton v. Evans,* 400 U.S. 74, 86 [91 S.Ct. 210, 27 L.Ed.2d 213] (1970). Speaking for the Court in *California v. Green,* 399 U.S. 149, 155–56 [90 S.Ct. 1930, 26 L.Ed.2d 489] (1970), Mr. Justice White said:

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See *Barber v. Page,* 390 U.S. 719 [88 S.Ct. 1318, 20 L.Ed.2d 255]; *Pointer v. Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923].

"Unfortunately, the law of confrontation appears to be in a state of some confusion, principally because of the *ad hoc* approach mandated by the United States Supreme Court, but also because the Confrontation Clause has been applied to the States only during the last decade. *Pointer v. Texas, supra.* See generally Baker, The Right to Confrontation, The Hearsay Rules, and Due Process, 6 Conn.L.Rev. 529 (1974); Note, Interplay of the Confrontation Clause and the Hearsay Rule, 29 Ark.L.Rev. 375 (1975). No explicit constitutional guidelines have been announced by the United States Supreme Court in the application of the Confrontation Clause (nor by the Tennessee Supreme Court in construing Article I, Section 9 of the Tennessee Constitution). Nevertheless, from a close reading of the major confrontation cases decided by the United States Supreme Court we conclude that at least three criteria must be met in order to satisfy federal constitutional confrontation rights:

"(1) By implication the evidence must not be 'crucial' nor 'devastating.' *Dutton v. Evans,* 400 U.S. 74, 87 [91 S.Ct. 210, 27 L.Ed.2d 213] (1972). As the Supreme Court of a sister state has put it:

> It appears from the various decisions that the admissibility in evidence of business records depends upon the purpose for which they are offered. If they are offered to prove an essential element of the crime or connect the defendant directly to the commission of the crime, then they must be proved through persons having personal knowledge of the element or connection and such persons must be available for cross-examination. If, instead of producing the person who has personal knowledge, the state relies on documents made by such person or recorded testimony, the defendant has been denied his right to confront the witnesses against him. *State v. Matousek,* 287 Minn. 344, 178 N.W.2d 604, 608 (1970).

"(2) The State must make a good faith effort to secure the presence of the person

whose statement is to be offered against the defendant. In the absence of such a showing, the witness cannot be deemed 'unavailable' *for purposes of the Confrontation Clause. Barber v. Page,* 390 U.S. 719, 724–25 [88 S.Ct. 1318, 20 L.Ed.2d 255] (1968). See also *California v. Green,* 399 U.S. 149, 161–62 [90 S.Ct. 1930, 26 L.Ed.2d 489] (1970); *Mancusi v. Stubbs, supra;* compare *Hicks v. State, supra,* at 178–79.

"(3) The evidence offered under a hearsay exception must bear its own 'indicia of reliability.' *Dutton v. Evans, supra,* [400 U.S.] at 89 [91 S.Ct. 210].

"At least superficially, the evidence before us satisfies the last of these three criteria. From the record it appears that the chemists were well-trained to perform the tests involved and that they had no apparent motive to falsify the reports. Yet it must also be noted that the records in this case, while they may satisfy the technical requirements of T.C.A. § 24–714, do not fit the classic business records mold, *i.e.* 'shop books' or hospital records. Entries in such records are considered reliable because they are made in the course of business and are routinely relied upon by others in carrying on the affairs of the business. In the case of hospital records, medical personnel make life and death decisions as a result of reports and record entries. Such documents are true 'business records,' and their trustworthiness stems from the fact that they are 'prepared for other use and only incidentally found pertinent to litigation.' *People v. Hobson,* 369 Mich. 189, 119 N.W.2d 581, 588 (1963). By contrast the records here realistically cannot be said to have been prepared for any reason other than their potential litigation value. Therefore, when they are produced at trial in lieu of personal testimony, and are offered to prove the single most damaging fact against this defendant, they fall into the category of the dreaded *ex parte* affidavit. It was to prevent the use of just such documents that the Confrontation Clause was adopted. *Mattox v. United States,* 156 U.S. at 242–43 [15 S.Ct. 337]. (Moreover, we are not unaware that at the time they performed the tests and made the reports, both absent witnesses were employees of the State, the very party now prosecuting this defendant and offering against him evidence which consisted of certain items allegedly bought by another State employee.)

"Furthermore, the evidence wholly fails to meet the first two requirements. Clearly the reports contain 'crucial' evidence, evidence which constitutes an 'essential element of the crime,' *i.e.,* the identity of the material in question as contraband. Yet we can find no reported cases in which the very identity of the evidence as contraband has been established by hearsay, with the possible exception of several cases involving the chemical analysis of alcohol. All of these cases predate *Pointer, Barber, Green,* and *Dutton* by some forty years. *Commonwealth v. Stoler,* 259 Mass. 109, 156 N.E. 71 (1927); *State v. Torello,* 103 Conn. 511, 131 A. 429 (1925); *Commonwealth v. Slavski,* 245 Mass. 405, 140 N.E. 465 (1923); *Bracey v. Commonwealth,* 119 Va. 867, 89 S.E. 144 (1916). Furthermore, all of them involved state statutes which explicitly authorized certification procedures in lieu of actual testimony by the person conducting the chemical analysis. By contrast, no such statutory authorization involving proof of controlled substances is provided under the Tennessee Code. See p. 14, *infra.*

"Addressing the last of the three criteria, we fail to find evidence that the State made what could be called a 'good faith effort' to secure the presence of the absent witnesses. As the United States Supreme Court noted in *Barber v. Page:*

It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that 'it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless' 5 Wigmore, Evidence § 1404 (3d ed. 1940).

Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law. 390 U.S. at 723–4 [88 S.Ct. 1318] (footnotes omitted).

The witness in *Barber* was needed in an Oklahoma state prosecution, but was incarcerated in a Texas federal prison at the time of trial. Under the Supreme Court's ruling, if the Oklahoma prosecutor could not rely on the 'unavailability' in such a situation absent a good faith effort to obtain the presence of the witness at trial, then surely the prosecutor in the case before us has run afoul of the constitutional requirements of the Confrontation Clause. Here the witnesses' absence was wholly temporary in nature and the problem was clearly and easily susceptible of correction by means of a continuance. See generally, McCormick, Evidence § 253 (2d ed. 1972). The case was down for first setting the defendant had been under indictment for few more than sixty (60) days, and there was (conveniently enough) a pending motion for a continuance, previously filed by the defendant. Given these circumstances it is difficult to see why the State failed to join in the motion or why the trial court failed to order a continuance, a course of action which would have foreclosed the very real possibility of later litigation concerning a violation of the defendant's confrontation rights.

"We conclude that the laboratory reports fail to meet the basic requirements of the Confrontation Clause. Thus they must likewise fall under the guarantees of the Tennessee Constitution. It follows that their introduction into evidence violated the constitutional right of this defendant to receive a fair trial and that the case should be remanded for a new determination of his guilt or innocence.

"In reaching this conclusion, we are not unmindful of the recent opinion of the Washington Supreme Court in *State v. Kreck, supra,* which treats a problem somewhat similar to the one before us with an opposite result. There the court was asked to rule on the admissibility under the Uniform Business Records Act of a laboratory report of a blood test offered as evidence in a murder case, the test having been conducted to determine the presence or absence of chloroform in a blood sample taken from the deceased victim. The court held that although the chemist who ran the test was out of the country on business, the results could be introduced through the testimony of his direct supervisor. This witness 'testified that while he did not personally conduct the test, he did *confer with* [*the analyst*] in his supervisory capacity and *verified the test results.*' 542 P.2d at 784 (emphasis added).

"Several points of distinction between *Kreck* and this case appear obvious, in terms of the three-fold constitutional criteria developed above. First, the evidence at issue in *Kreck* was relevant only to the issue of the means of committing the alleged homicide, and did not establish an essential element of the crime, as does the identity of the evidence as contraband in the case before us. Second, the court's determination of reliability in *Kreck* was undoubtedly influenced by the personal verification of the test results by the testifying witness. 542 P.2d at 784, 785. No such evidence of personal conference nor personal verification appears in the record before us. Finally, on the issue of availability, we note that the *Kreck* opinion, while it alludes to the *Dutton v. Evans* reliability requirement, fails to mention other recent United States Supreme Court decisions. Specifically, it omits any discussion of *Barber v. Page,* but instead holds that the applicable business records statute 'contains no requirement that the person who prepared the record be shown to be unavailable before the record can be admitted.' 542 P.2d at 787. This analysis begs the question. Although the state statute may contain no such requirement for purposes of qualifying the evidence as an exception to the hearsay rule, federal constitutional law governing confrontation in a criminal case quite clear-

ly mandates either presence, *California v. Green, supra* [399 U.S.] at 157 [90 S.Ct. 1930], or unavailability coupled with proof of a good faith effort to secure attendance, *Barber v. Page, supra* [390 U.S.] at 724–25 [88 S.Ct. 1318]. Thus the major weakness in the *Kreck* opinion is its failure to recognize a fundamental distinction between the applicability of the business records exception in criminal as opposed to civil cases. While the successful invocation of a recognized hearsay exception may be more or less automatic in the latter situation, its utilization in the criminal setting is potentially restricted by the requirements of the Confrontation Clause.

"Finally, we have reviewed our own Supreme Court's decision in *State v. Robbins,* 512 S.W.2d 265 (Tenn.1974). In that case the Court was called upon to decide the constitutionality of T.C.A. § 59–1049, which provides for certification of the results of laboratory tests conducted to determine the alcoholic content of blood. The statute further provides:

> The certificate provided for in this section shall, when duly attested by the chief medical examiner or his duly appointed representative, be admissible in any court, in any criminal proceeding, as evidence of the facts therein stated, and of the results of such test *if the person taking or causing to be taken the specimen and the person performing the test of such specimen shall be available, if subpoenaed as witnesses, upon demand by either party to the cause.* . . . (emphasis added).

Thus the *Robbins* court concluded that the statute 'does not require the testimony of unconfronted witnesses to be admitted into evidence but merely allows such evidence when the defendant does not object. . .' 512 S.W.2d at 268. In addition, it seems clear that the legislative intent underlying T.C.A. § 59–1049 is to promote efficiency while at the same time scrupulously to protect the criminal defendant's confrontation rights. But here we have no authorizing statute, and here the defendant *objected* to the denial of his right to confront the witnesses against him.

"We are in sympathy with recent efforts to increase courtroom efficiency and we are in agreement with the progressive philosophy which holds that the truth-determining process in criminal cases should not be hindered by needless technicalities. One of the salutary manifestations of the trend toward effectuation of these two goals is the recent adoption in the federal court system of the Federal Rules of Evidence, which substantially expand the number of recognized exceptions to the rule against hearsay. The various state legislatures would do well to emulate the achievement of the federal courts in this area of the law. At the same time we are wary of the possible ill-effects that a decision other than the one we reach here would have on the administration of criminal justice in Tennessee and of its inevitable erosion of state and federal constitutional guarantees. If we were to allow the prosecution to prove the very essence of the crime charged by means of a written report, untested by cross-examination and submitted in lieu of the testimony of witnesses not truly unavailable, we would have taken a step backward rather than forward. Therefore the assignment of error addressed to the violation at trial of the defendant's constitutional right to confrontation must be sustained."

We concur in the conclusion of the Court of Criminal Appeals that in the face of an objection by the person charged, the State can not prove an essential element of a criminal offense by test results introduced through a witness other than the one who conducted the tests. If it were otherwise, the person charged with the offense would be denied his constitutional right to confront witnesses against him.

The judgment of the Court of Criminal Appeals, reversing the trial court and remanding the case for trial, is affirmed.

FONES, HENRY, BROCK, and HARBISON, JJ., concur.

## OPINION ON PETITION TO REHEAR

The State of Tennessee has filed a pleading entitled "Petition to Rehear, or in the alternative, Motion for Certificate of Federal Question." Basically, the State asks this court to reconsider and amend its judgment to reflect whether this court predicated its holding on the Sixth Amendment to the Constitution of the United States, or on Article 1, Section 9 of the Constitution of Tennessee, or upon both articles.

We see no need to amend or clarify the judgment in this case. Both the state and federal constitutions give a defendant in a criminal action the right to confront witnesses against him. It necessarily follows that when a defendant is deprived of that right, such deprivation violates both the Constitution of Tennessee and the Constitution of the United States.