**STATE of Tennessee, Appellant,**

v.

**Fred H. ARMES, Appellee.**

Supreme Court of Tennessee.

Nov. 3, 1980.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, for appellant.

William A. Allen, Norris, Harry Lillard, Oak Ridge, for appellee.

OPINION

FONES, Justice.

The issue in this Court is whether the admission of the preliminary hearing testimony of a witness who was asserted by the State to be unavailable at trial, violated the confrontation clauses of the United States and Tennessee Constitutions.

Defendant was convicted of two counts of accessory to forgery and two counts of accessory to passing forged instruments and of being an habitual criminal. He was sentenced to not less than three nor more than four years on each count, enhanced to life imprisonment by the habitual criminal conviction.

The Court of Criminal Appeals held that the admission of the hearsay evidence violated the confrontation clause, and reversed and remanded for a new trial. That Court also found a fatal defect in the habitual criminal conviction, beyond the consequences of the result of reversal of all triggering offenses on the confrontation issue.

I.

The State's proof shows that in March of 1978, defendant Armes, and an unknown woman visited an Oak Ridge upholstery business known as "Romar," ostensibly to have some stripes put on defendant's automobile. One of the employees of Romar, Vernon Hall, testified that defendant asked several employees, including Hall, to step outside for a demonstration of a pistol he had bought. Some time thereafter, the employees discovered that a number of checks were missing from the business' check book. Hall also stated that the only persons authorized to sign the business' checks were his brothers, Andrew and Joe Hall.

Employees of two business establishments in Oak Ridge testified that on March 17, 1980, they had cashed Romar checks in the amounts of $205.76 and $209.00 for one Tony Jackson. These checks were made out to Jackson, were endorsed by him, and had been signed with the name "H. M. Russell." These checks were returned by the bank due to the improper signature.

Connie Seeber, fifteen–year–old niece of one Don Breedon, testified that in March 1978, her uncle had showed her some blank checks, which he asked her to sign with the name "Russell." She stated she was not aware of any wrongdoing.

Don Breedon's testimony showed that he and defendant, Armes, met and typed out the amounts on four blank checks, all of

which were made payable to Jackson. Later that week, Breedon met with defendant and handed him the checks and agreed to meet with him the next day and split the proceeds with Tony Jackson. Jackson subsequently cashed all four checks.

Ron Breedon, twin brother of Don Breedon, further testified that he observed defendant giving some checks to Don at a meeting in a local store.

J. D. Hooper, an Oak Ridge police officer, was the investigator in this case and testified that after he was notified by Andrew Hall of the missing checks, he discovered that four of the checks had been cashed at various businesses in town.

The controversial testimony arose when Hooper was also allowed to testify as to what Tony Jackson had said at the preliminary hearing. The prosecutor's purported need to use this hearsay testimony arose due to the following facts.

Jackson had apparently disappeared at some time before the first trial in this case, which resulted in a mistrial. He had been subpoenaed by the State, but failed to appear in that trial and his testimony at the preliminary hearing was not offered as evidence.

In the second trial, in a jury–out hearing, the prosecutor called the Magistrate, Judge Luther Reed, who presided at the preliminary hearing. The jury–out hearing established that at the preliminary hearing defendant elected not to have counsel represent him but chose instead to represent himself. Defendant, in the opinion of Judge Reed, did a competent job of cross–examining the witnesses, including Tony Jackson, but the Judge had no impression as to the effectiveness of these efforts and could not trust his memory as to the substance of Jackson's testimony. Also, the State proved through Officer Hooper and stipulation that defendant had issued a subpoena for Jackson a week before trial, which was returned "not found." The prosecutor had issued a similar subpoena the day before trial; which was also returned without success in locating the witness. Jackson, a juvenile, had received probation

in Juvenile Court on charges related to the present case on the condition he testify against Armes at the preliminary hearing. In addition, Jackson had made at least four statements to Officer Hooper concerning the facts of this case, all of which were different in various degrees.

After instructing the jury that Officer Hooper's testimony should only be considered on two of the remaining six counts of the indictment, Hooper was allowed to testify as follows:

> "At the time of the preliminary, Tony Jackson testified that Fred Armes gave Tony Jackson the checks to cash, and that he proceeded to cash the checks at which time he gave Fred Armes some of the money for cashing the checks, the exact amount I don't remember."

In the jury's presence, through cross examination of Hooper, defendant established Jackson's inconsistent statements and his motive for testifying at the preliminary hearing.

## II.

In *State v. Henderson*, 554 S.W.2d 117 (Tenn.1977), the Court reviewed the standards and criteria that must be met in order to satisfy the Confrontation Clause of the Sixth Amendment to the United States Constitution. This amendment has been held applicable to the states by means of the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Court further held in *Henderson* that these same criteria also applied to Article I, Section 9 of the Tennessee Constitution, which states in relevant part as follows: "That in all criminal prosecutions, the accused hath the right ... to meet the witnesses face to face ...."

In *Henderson* the accused had been charged with possession of LSD with the intent to sell and with the sale of that drug. The only evidence offered by the prosecution, however, for the purpose of establishing the essential element of the nature of the substance Henderson possessed and sold

was test results from the State Toxicology Lab. The lab assistants who conducted the tests were on vacation at the time of trial and were not available to testify. Yet, their absence was temporary and the State could have easily remedied the problem by joining in a motion to continue the trial until these witnesses could attend. In addition, the reliability of the introduced documents was suspect because the sole purpose for their preparation was for this trial, and thus they were not cloaked in a presumption of reliability created by the hearsay exception of "business records."

Under these facts we held that Henderson's confrontation rights under the United States and Tennessee Constitutions had been violated in light of recent United States Supreme Court decisions construing the confrontation clause of the Sixth Amendment. By implication we adopted the same criteria enumerated in those cases for our own Constitution.

Applying the tripartite test adopted in *Henderson* we hold that defendant's confrontation rights have likewise been violated under the facts of this case.

■ The first hurdle placed on the prosecutor, who wishes to be allowed to introduce evidence that would normally infringe on the defendant's confrontation rights, is that he must establish that the use of such evidence is necessary. In order to do so he must show that nonhearsay or direct evidence is unavailable due to the fact that the witness has invoked his privilege against self incrimination, *see, e. g., Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), or is uncooperative and/or unable to recall his former testimony, *see, e. g., California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), or is physically absent, *see, e. g., Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In the later situation, where the prosecution alleges the witness is unavailable due to physical absence, it must go one

step further and show that it has made a "good faith effort" in attempting to procure the witness for trial, but has been unable to do so. *Barber v. Page, supra.*

■ We hold that the State has failed to establish that it made such a good faith effort in the present case. The fact that the witness, Jackson, failed to appear at the first trial should have put the State on notice that some additional efforts may have been needed to procure this witness other than merely issuing another subpoena to the same address. The defendant's unsuccessful subpoena a week before trial should have alerted the prosecution that additional efforts to locate the witness for the pending trial were still needed. In light of these facts the prosecutor's de minimis effort of issuing a subpoena for Jackson the day before the trial can only be seen as less than a good faith effort. The prosecuting attorney's statement to the Court concerning the efforts of the State's investigator to locate the witness cannot be considered as evidence of proof on the issue of the State's good faith effort.

The United States Supreme Court's most recent decision on this issue, *Ohio v. Roberts*, —— U.S. ——, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), is clearly distinguishable on its facts. In that case the Court determined that a good faith effort had been made by the prosecution where five separate subpoenas had been issued to procure the witness, some of which were issued months before the trial. In addition, evidence was produced in that case indicating that the prosecution had made efforts to find and locate the witness for over a year and had been told by the witness' parents that the witness was outside the state but that her exact whereabouts were unknown. *Id.* at 254.

Even if the State had established that it had made a good faith effort to procure Jackson, it still would have failed to establish the second prong of the test, which is that the evidence must carry its own "indicia of reliability." *State v. Henderson, supra* at 120.

In those cases in which the Supreme Court has considered whether testimony from a preliminary hearing violates the confrontation clause an actual transcript of the entire proceedings had been introduced. *See, e. g., Ohio v. Roberts, supra, California v. Green, supra, Barber v. Page, supra, Pointer v. Texas, supra.* In *Douglas v. Alabama, supra,* the state was relying on a written confession made by an unavailable codefendant, and in *Mancusi v. Stubbs, supra,* the transcript of a former trial was introduced as evidence. Thus, in none of these cases was there any real issue as to the accuracy of the report that contained what the declarant allegedly said. The only issues were whether the documents were genuine and contained within them an "indicia of reliability" as to the truth of the matter or issue they purported to assert.

In the case of *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), a witness was allowed to give *oral* testimony as to what another co–conspirator had said about the defendant's guilt. But in that case the reported hearsay was a short, one–sentence statement and fell within a well recognized hearsay exception as a statement by a co–conspirator.

█ In the present case the inability of any witness to recall accurately the entire, word for word proceedings at the preliminary hearing places grave doubts on the "indicia of reliability" of this statement. In addition, the truth contained within the statement itself, even if accurately reported, is highly suspect due to Jackson's motivation to testify on behalf of the State when the statement was made and due to the inconsistent statements made by Jackson.

█ In the present case the cross–examination of Jackson can only be seen as less than effective for three reasons. First, the examination was not conducted by counsel. The language of many cases indicates that the actual cross–examination by counsel is an important consideration. *See, e. g., Pointer v. Texas, supra,* 380 U.S. at 407, 85 S.Ct. at 1069, and *Mancusi v. Stubbs, supra,* 408 U.S. at 213–14, 92 S.Ct. at 2313. (No confrontation violation where at former trial defendant was represented by counsel, who effectively crossexamined the witnesses).

The second reason that the cross examination is not effective has to do again with the lack of a record or transcript of the preliminary hearing. As indicated above, the witness, police officer Hooper, only gave a short summary of what took place at the preliminary hearing; he was unable to recall the substance of Defendant's cross examination at trial. Thus, none of the witness' cross examination testimony was ever presented to the jury. Under these circumstances, even the most effective, devastating, and truth–seeking examination, whether by counsel or otherwise, would be for nought since such examination was never offered to the jury for consideration.

We also look to a third factor in considering the reliability of the statement in this case. The fact that this statement is derived from a preliminary hearing, which is limited in its scope and purpose, see Rule 5.1 of the Tennessee Rules of Criminal Procedure, must be given some weight. Admittedly the defendant is entitled to cross examine the witnesses against him under Rule 5.1, but without a complete, written record of the proceedings, establishing whether the cross examination was thorough or complete is impossible because the magistrate may have pretermitted extensive cross examination once probable cause was established. As Justice Marshall stated in *Barber v. Page, supra,* 390 U.S. at 725, 88 S.Ct. at 1322:

> "A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial."

*See, also, California v. Green, supra,* 399 U.S. at 195–203, 90 S.Ct. at 1954 (Brennan, J. dissenting); *Ohio v. Roberts, supra,* 100 S.Ct. at 2545 fn. 1 (Brennan, J. dissenting).

We now turn to the third criteria of the *Henderson* test, that being a determination

of whether the hearsay evidence was "devastating" or "crucial." *State v. Henderson, supra,* at 119–120; *Dutton v. Evans, supra,* 400 U.S. at 87, 91 S.Ct. at 219; *Douglas v. Alabama, supra,* at 419, 85 S.Ct. at 1077.

■ We hold that under the facts of this case the evidence presented by Officer Hooper as to what Jackson had said at the preliminary hearing was "crucial" and "devastating." This evidence amounted to an eye–witness account of the crucial acts of putting the forgery scheme into operation, seeing it to fruition, and reaping its benefits. It also corroborated testimony by other state witnesses. Under these facts, the evidence was both "crucial" and "devastating."

In light of the foregoing discussion, we hold that none of the criteria established to protect this defendant's confrontation rights have been established in this case and the decision of the Court of Criminal Appeals must be affirmed.

### III.

The action of the Court of Criminal Appeals reversing the four convictions because of the admission of Jackson's preliminary hearing testimony through the hearsay testimony of Hooper in violation of defendant's right of confrontation removed all possible offenses that would trigger the habitual criminal conviction.

■ With the case in that posture it was unnecessary that the Court of Criminal Appeals address other questions dealing with the status of count eight of the indictment as a triggering offense. Those questions were rendered moot when all possible triggering convictions were set aside and a new trial ordered.

On remand it is obvious that the habitual criminal charge cannot be in the same posture, with respect to the offenses that remain subject to retrial, that it was in at the time of submission to the jury at the first trial. Without reaching the merits of the Court of Criminal Appeals dicta we hold that the circumstances of this case require that that portion of the Court of Criminal Appeals opinion be reversed.

As modified, the judgment of the Court of Criminal Appeals reversing and remanding for a new trial is affirmed.

BROCK, C. J., and COOPER, HARBISON and DROWOTA, JJ., concur.