# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 19, 2002

## STATE OF TENNESSEE v. VERNON DEWAYNE WALLER

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-C-1618      Cheryl Blackburn, Judge**

_____

**No. M2001-02414-CCA-R3-CD - Filed August 23, 2002**

_____

A Davidson County jury convicted the Appellant, Vernon Dewayne Waller, of sale of a counterfeit controlled substance, a class E felony. The trial court sentenced Waller as a career offender to six years in the Department of Correction. On appeal, Waller presents the following issues for review:

> (1) Did the trial court err in ruling that if the Defendant chose to testify, his prior felony drug convictions would be admissible to impeach his credibility;

> (2) Did the trial court err in allowing the State to introduce a substance alleged to be cocaine and a lab report identifying it as such through a witness other than the technician who tested the substance; and

> (3) Did the trial court err in finding the Defendant was a career offender.

After a review of the record, we find that Waller's issues are without merit. Accordingly, the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

C. Dawn Deaner and Joseph E. Clifton, Assistant Public Defenders, Nashville, Tennessee, for the Appellant, Vernon Dewayne Waller.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## Factual Background

On May 9, 2000, Metro undercover Officers Dan Schager and Buddy Rhett were assigned the surveillance of "street-level" drug dealers in a high crime area of Nashville. As the officers drove by a liquor store located on the corner of Lafayette and Lewis Streets in Nashville, the Appellant "signaled for [the officers] to come over." Officer Rhett, the driver, pulled into the parking lot of the liquor store. The Appellant then proceeded to the passenger's side window of the vehicle and asked Officer Schager what he "needed," and Officer Schager responded that he needed twenty dollars worth of crack cocaine. The Appellant "reached down into his sock and got out a little piece of paper with some rocks in it." After the exchange was completed, the "takedown unit" arrested the Appellant. The twenty dollar bill given to the Appellant by Officer Schager was recovered underneath the Appellant's person. During the encounter, another individual approached the driver's side window and conversed with Officer Rhett. Officer Rhett heard the Appellant ask Officer Schager what he needed and Officer Schager's response that he need twenty dollars worth of crack cocaine. Officer Rhett also observed the exchange of money and cocaine. The substance sold by the Appellant was later tested and determined not to be cocaine. At trial, Officer Schcager testified that he was "completely fooled" by the appearance of the counterfeit rocks, and Officer Rhett testified that the rocks appeared to be cocaine "at first glance."

On September 1, 2000, a Davidson County grand jury indicted the Appellant for sale of a counterfeit controlled substance represented to be a substance containing cocaine, in violation of Tennessee Code Annotated § 39-17-423(a) (1997), a class E felony. On May 15, 2001, after a trial by jury, the Appellant was found guilty as charged. At sentencing, the Appellant was found to be a career offender and was sentenced to the required term of six years. This timely appeal followed.

## ANALYSIS

## I. Admissibility of Prior Convictions

First, the Appellant asserts that the trial court erred in ruling that his three prior felony drug convictions were admissible for impeachment purposes. The relevant convictions are: (1) on February 18, 1992, the Appellant was convicted of sale of a Schedule II controlled substance, cocaine; (2) on November 19, 1999, the Appellant was convicted of facilitation of sale of a Schedule II controlled substance; and (3) on March 30, 1990, the Appellant was convicted of sale of a counterfeit controlled substance. Prior to trial, the State provided the Appellant with notice of its intent to use the Appellant's prior convictions for impeachment purposes. A jury-out hearing was held to determine whether the Appellant's prior drug convictions would be admissible to impeach his testimony should he elect to testify. The trial court found that if the Appellant testified, the convictions were admissible for impeachment purposes under Rule 609, Tennessee Rules of

Evidence, because such convictions were probative of his credibility.[1] The Appellant argues that the prior drug convictions were not relevant to the issue of credibility and that the unfair prejudicial effect outweighed the probative value of the impeaching convictions. A trial court's determination under Rule 609 will not be reversed unless it appears from the record that the trial court abused its discretion. *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

The general rule is that prior convictions can be used to impeach the credibility of the accused in a criminal case who takes the stand in his own defense. *See* Tenn. R. Evid. 609. However, before the State is permitted to impeach an accused's credibility, certain conditions and procedures must be satisfied. The prior conviction must be for a crime punishable by incarceration in excess of one year or for a crime involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2); *see also Blanton*, 926 S.W.2d at 959. Such conviction, however, is not admissible if more than ten years has elapsed between the date of release from confinement and commencement of the present action. Tenn. R. Evid. 609(b). The rule also mandates that the State give reasonable written notice prior to trial of the particular convictions it intends to use to impeach the accused. Tenn. R. Evid. 609(a)(3).

In the present case, the State provided the Appellant with notice of its intended use of the Appellant's convictions prior to trial. All three drug convictions were punishable by imprisonment in excess of one year and were within the ten-year time limit. Thus, the only question for our review is whether the trial court properly balanced the probative value of the convictions against their prejudicial effect. In *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999), our supreme court addressed the criteria to be considered in a Rule 609 hearing as follows:

> In determining whether the probative value or a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues, two criteria are especially relevant. A trial court should first analyze the relevance the impeaching conviction has to the issue of credibility. . . . If the conviction is probative of the defendant's credibility, the trial court should secondly assess the similarity between the crime on trial and the crime underlying the impeaching conviction.

---

[1]The relevant findings of the trial court are as follows:

Case 90-W-72, where he was convicted of possession of a controlled substance for resale, 91-S-629, sale of a controlled substance, and then 99-D-2261 was facilitation of sale of controlled substance, all of those are to some extent crimes of dishonesty in the sense of it is illegal to possess those substances in this state. In the possession of them would indicate sort of a crime of dishonesty.

The question is are they so closely related that the prejudicial value outweighs any probative value.

Having heard the testimony in the Motion to Suppress, it would clearly, if Mr. Waller were to testify, would be an issue of credibility about whether or not he did or did not commit this offense.

*Id.* (citations omitted). This court has reached different conclusions as to whether prior drug convictions are suggestive of dishonesty. *See State v. Walker*, 29 S.W.3d 885, 891 (Tenn. Crim. App.1999), *perm. to appeal denied*, (Tenn. 2000) (selling drugs does not involve "dishonesty or false statement"); *State v. Brian Roberson*, No. 01C01-9801-CC-00043 (Tenn. Crim. App. at Nashville, Dec. 21, 1998), *perm. to appeal denied* (Tenn. 1999) (the act of drug dealing is suggestive of dishonesty); *State v. Gibson*, 701 S.W.2d 627, 629 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1985) (the very nature of the act of dealing in drugs is indicative of dishonesty). In *State v. Dooley*, 29 S.W.3d 542, 554 (Tenn. Crim. App. 2000), this court recognized that the admission of a prior felony drug conviction is probative to the issue of an accused's credibility and held that the trial court did not abuse its discretion in finding that a prior drug conviction was relevant to the issue of credibility in a second degree murder case.

The illegal sale of drugs is an extremely profitable criminal enterprise and its very nature involves a sustained intent to violate the law and the use of deceptive practices. *State v. Christopher Knighton*, No. E2000-00746-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Mar. 14, 2001). These crimes are normally not detected in the absence of a police undercover operation. *Id.* People who deal in drugs frequently suffer an addiction to drugs and commit other crimes to obtain money to buy drugs. *Id.* These circumstances all involve elements of dishonesty. *Id.* We agree with this court's opinion in *State v. Christopher Knighton* and find that the better reasoned view is expressed in those cases which hold that felony drug convictions are relevant to the issue of credibility.

The similarity between the case on trial and the prior conviction does not *per se* render the prior conviction inadmissible. The more substantial inquiry is the probative value the convictions have on the Appellant's credibility. *See State v. Steve Mason*, No. 01C01-9603-CC-00103 (Tenn. Crim. App. at Nashville, June 6, 1997). "Courts frequently admit the impeaching conviction when it is particularly probative of credibility, even if it is identical to the crime being tried." *Id.* (citations omitted). As previously noted, the challenged prior drug convictions all implicate the critical element of dishonesty. Accordingly, we conclude the probative value of permitting use of these convictions outweigh any prejudicial effect. This claim is without merit.

## II. Laboratory Report

Next, the Appellant contends that the trial court erred by admitting into evidence a genuine sample of cocaine and the accompanying laboratory report prepared by Laura Hodge, a Tennessee Bureau of Investigation (TBI) forensic scientist, which were obtained from an unrelated case. The evidence was admitted during the testimony of Officer Rhett for the purpose of illustrating to the jury the similarity in appearance between crack cocaine and the substance sold by the Appellant. The trial court found that the laboratory report constituted hearsay but, nonetheless, found the report admissible as a business record of the TBI. The Appellant excepts to this ruling specifically arguing that "because the report was prepared solely for the purpose of litigation (albeit in another case), its reliability is suspect just as if it had been prepared for a trial in this case." Rule 803(6) of the Tennessee Rules of Evidence provides:

-4-

Records of Regularly Conducted Activity. – A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes every kind of business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

Tenn. R. Evid. 803(6). The distinction between records prepared in the normal course of business, as was the laboratory report, and records prepared for litigation, is:

In order to have sufficient indicia of trustworthiness to qualify as a business record under Rule 803(6), the record must have been made in the "regular practice of that business activity," and it must have been "kept in the course of a regularly conducted business activity." An extraordinary report prepared for an irregular purpose, particularly when prepared with litigation in mind, may not be made in the regular course of business and may be inadmissible as a business record under Rule 803(6). On the other hand, an investigative accident report compiled by a business as a routine matter should not be excluded solely because litigation sometimes ensues following an accident.

*State v. Dean*, 76 S.W.3d 352, 365 (Tenn. Crim. App. 2001), *perm. to appeal denied*, (Tenn. 2002) (quoting Neil P. Cohen et al., Tennessee Law of Evidence, § 8.11[6] (4th ed. 2000)). The testimony established that the laboratory report was made in the regular course of the TBI's business, although, obviously, such records might be used in legal proceedings. "However, that possibility did not mean that the records were 'dripping with motivations to misrepresent,' as might have been the case had they been prepared specifically for use in litigation." *Id.* (quoting *Hoffman v. Palmer*, 129 F.2d 976, 991 (2nd Cir. 1942)). Accordingly, we conclude that the laboratory report was admissible as a business record. *See State v. Bobby Wells, Jr.*, No. E2000-01496-CCA-R3-CD (Tenn. Crim. App. at Knoxville, June 28, 2001), *perm. to appeal denied*, (Tenn. 2001).

Alternatively, the Appellant, relying upon *State v. Henderson*, 554 S.W.2d 117 (Tenn. 1977), contends that, by not having the person who conducted the examination and completed the laboratory report available to testify, the introduction of this report into evidence violated his constitutional right to confrontation. In *Henderson*, our supreme court held that out-of-court statements must meet certain criteria in order to satisfy the Confrontation Clause of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Tennessee Constitution. *Henderson,* 554 S.W.2d 117. Specifically, the court recognized that valid claims of an unconstitutional abridgement of the right to confront witnesses arise when:

(1) the hearsay evidence is crucial to proving the State's case, *i.e.*, the evidence is offered to prove an essential element of the crime or it connects the defendant directly to the commission of the crime;

(2) there is no proof that the witness is unavailable, *i.e.*, the State must make a good faith effort to secure the presence of the person whose statement is to be offered against the defendant; and

(3) the hearsay evidence is lacking its own indicia of reliability.

*Id.* at 119-20.

Notwithstanding the constraints imposed by the *Henderson* tripartite test, our supreme court has also recognized that firmly rooted exceptions to the hearsay rule do not violate the Confrontation Clause. *See State v. Causby*, 706 S.W.2d 628, 631 (Tenn.1986). The rationale for this principle is based upon the premise that some forms of admissible hearsay rest upon such solid foundations that admission of virtually any evidence within them comports with the right of confrontation. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980); *Causby*, 706 S.W.2d at 631 (former testimony hearsay exception is such a firmly established rule and so inherently reliable that any such evidence necessarily comports with the right of confrontation). Indeed, statements admitted under a firmly rooted hearsay exception are so inherently trustworthy that adversarial testing would add little to their reliability. *See State v. Kennedy*, 7 S.W.3d 58, 66 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1999). The courts of this state, our sister states, and many federal courts have held that the "business records" exception to the rule against hearsay is firmly established. *Id.* at n.8; (citing *United States v. Ismoila*, 100 F.3d 380, 392 (5th Cir. 1996), *cert. denied*, 520 U.S. 1219, 117 S. Ct. 1712 (1997); *Minner v. Kerby*, 30 F.3d 1311 (9th Cir. 1994) (introduction of chemist's notes through supervisor not violative of Confrontation Clause); *United States v. Baker*, 855 F.2d 1353, 1360 (8th Cir. 1988) (business records exception is firmly rooted hearsay exception to prevent violation of Confrontation Clause); *Reardon v. Manson*, 806 F.2d 39 (2nd Cir. 1986), *cert. denied*, 481 U.S. 1020, 107 S. Ct. 1903 (1987) (chemist report introduced through testimony of supervisor properly admitted sufficient indicia of reliability); *People v. Vega*, 225 A.D.2d 890, 639 N.Y.S.2d 511, 513-14 (A.D. 3 Dept. 1996) (introduction of technician's notes under business records exception rendered technician's testimony unnecessary where supervisor actually analyzed the samples); *State v. Fontenette*, 1991 Ohio App. LEXIS 4366, No. 59014 (Ohio App. Sept. 19, 1991) (testimony by laboratory supervisor regarding DNA profile properly admitted under business records exception did not violate Confrontation Clause)).

A business record may be introduced by the custodian of those records or any other qualified witness. *State v. Baker*, 842 S.W.2d 261, 264 (Tenn. Crim. App.1992). Whatever his or her title the witness must be able to testify as to the identity of the record, the mode of preparation, and whether the record was made in the regular course of business at or near the time of the recorded event. *Id.* In the present case, the State failed to call the records custodian to testify as to the

authenticity of the records; rather, the State relied on the testimony of Cassandra Franklin, a TBI forensic scientist.[2] Rule 803(6) does not require the custodian of the records to testify, rather it

> . . . simply provides that the witness be the records "custodian or other qualified witness." Typically that witness will be in charge of maintaining records of the particular business, but other employees or officers or appropriately informed witnesses could be used as well. The key is that the witness have knowledge of the method of preparing and preserving the records. If no witness is available to testify, the records cannot be authenticated as business records, unless the parties stipulate to authentication.

*Dean*, 76 S.W.3d at 365 (quoting NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE, § 8.11[11] (4th ed. 2000)). Based upon Ms. Franklin's duties and experience,[3] we conclude that she was a "custodian or other qualified witness" and, as such, qualified to testify as to the business records. Consequently, the cocaine and accompanying laboratory report were admissible into evidence. This issue is without merit.

---

[2]Ms. Franklin prepared the laboratory report analyzing the substance sold by the Appellant.

[3]During the course of the trial, Ms. Franklin testified:

> Q. (GENERAL GUNN) Ms. Franklin, are you aware of another forensic scientist there by the name of Laura Hodge?
>
> A. (WITNESS) Yes, I am.
>
> Q. All right, and does she do the same type of analysis for controlled substances that you do?
>
> A. Yes, she does.
>
> Q. All right, and as part of your job when you do a forensic analysis, is part of the obligation to complete a report containing those findings?
>
> A. Yes, that's correct.
>
> Q. And how are those reports stored or kept to be retrieved at a later time?
>
> A. The reports are stored in an evidence facility, which is located downstairs in our new building now, and they are kept for a certain period of time. I think it is like five years, I think, for drug cases that they are kept.
>
> Q. All right, and do each of the forensic chemists that analyze these substances, do they generate a report for each –
>
> A. Yes, they do. Everyone is required to.

### III. Career Offender Status

In his final issue, the Appellant contends that the trial court erred by classifying him as a career offender pursuant to Tennessee Code Annotated § 40-35-108(a)(3) (1997). Specifically, "he contends that the record fails to establish that each of his six (6) prior felony convictions was committed during a separate course of conduct in different 24 hour time periods." As asserted by the State, the Appellant failed to object, based upon the challenged ground, to admission of documents regarding his six prior felony convictions. Accordingly, we conclude that the Appellant has waived the issue for review. *See* Tenn. R. App. P. 36(a).

However, we elect to proceed with review of the merits. Tennessee Code Annotated § 40-35-108(a)(3) defines a "career offender" as a defendant who has received "[a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony." A prior conviction "means a conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced." Tenn. Code Ann. § 40-35-108(b)(1). Additionally, prior convictions include "convictions under the laws of any other state, government, or country which, if committed in this state, would have constituted an offense recognizable by the laws of this state." Tenn. Code Ann. § 40-35-108(b)(5). Notwithstanding, "[c]onvictions for multiple felonies committed as a part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions." Tenn. Code Ann. § 40-35-108(b)(4).

The evidence provided at the sentencing hearing reveals that the Appellant was convicted in Davidson County of the following felonies:

(1) On June 6, 1984, in case number 83-F-1832, the Appellant pled guilty to passing forged papers over $200, a class E felony, and received a three-year sentence. The presentence report reflects that the event/arrest date was December 1, 1982;

(2) On November 13, 1984, in case number 83-S-1275, the Appellant pled guilty to robbery, a class C felony, and received a five-year sentence. The presentence report reflects that the event/arrest date was January 1, 1983;

(3) On April 9, 1985, in case number 85-W-40, the Appellant pled guilty to robbery, a class C felony, and received a five-year sentence. The presentence report reflects that the event/arrest date was March 1, 1984;

(4) On March 30, 1990, in case number 90-W-72, the Appellant pled guilty to sale of a counterfeit controlled substance, a class E felony, and received a one-year sentence. The presentence report reflects that the event/arrest date was August 1, 1989;

(5) On February 18, 1992, in case number 91-S-629, the Appellant pled guilty to sale of a Schedule II controlled substance, cocaine, a class B felony, and received an eight-year sentence. The presentence report reflects that the event/arrest date was July 17, 1990;

(6) On November 19, 1999, in case number 99-D-2261, the Appellant pled guilty to facilitation of sale of a Schedule II controlled substance, a class C felony, and received an eight-year sentence. The presentence report reflects that the event/arrest date was June 15, 1999.

Contrary to the assertions of the Appellant, the information provided in the pre-sentence report and at the sentencing hearing provides sufficient evidence that each of the Appellant's convictions occurred over twenty-four hours apart. Accordingly, each conviction may be treated as an individual conviction for purposes of determining the Appellant's classification as a career offender.

As noted earlier, the Appellant was convicted of sale of a counterfeit controlled substance, a class E felony. Tenn. Code Ann. § 39-17-423(a). Accordingly, the evidence must show that the Appellant has "[a]t least six (6) prior felony convictions of any classification" before he may be classified as a career offender. Tenn. Code Ann. § 40-35-108(a)(3). The proof demonstrates that the Appellant has six valid prior felony convictions in this state. The trial court was correct in determining that the Appellant satisfies the criteria for classification as a career criminal. As such, imposition of the six-year sentence as a career offender was mandated by statute. Tenn. Code Ann. §§ 40-35-108(c), -112(c)(2) (1997). This issue is without merit.

## CONCLUSION

Finding no error committed by the trial court, we affirm the Appellant's conviction and sentence imposed for sale of a counterfeit controlled substance.

_____
DAVID G. HAYES, JUDGE