IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. QUINN L. HAMILTON

**Appeal from the Criminal Court for Davidson County**
**No. 97-C-2004     Cheryl Blackburn, Judge**

---

**No. M2001-02748-CCA-R3-CD Filed December 5, 2002**

---

A jury convicted the Defendant, Quinn L. Hamilton, of aggravated robbery, a Class B felony, and evading arrest, a Class D felony. The trial court sentenced the Defendant as a Range II multiple offender to consecutive terms of nineteen years and seven years, respectively, for an effective sentence of twenty-six years, to be served in the Department of Correction. In this appeal as of right, the Defendant contends that the trial court erred in declaring the victim witness unavailable and allowing his prior testimony to be admitted at trial as substantive evidence. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

John E. Rodgers, Jr., Nashville, Tennessee, for the appellant, Quinn L. Hamilton.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bret T.Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The robbery in this case occurred on February 28, 1997. On May 20, 1997, the victim, Quan Shelton, testified at the Defendant's preliminary hearing. The Defendant's attorney was present and cross-examined Mr. Shelton. Mr. Shelton testified that two men robbed him at about one o'clock in the afternoon on February 28, 1997. Mr. Shelton was walking down the street alone when two black men accosted him. The younger man was on a bicycle. The older man walked up to Mr. Shelton, pulled a handgun, put the gun to Mr. Shelton's stomach, and removed the gold necklace that Mr. Shelton was wearing. The man then began reaching into Mr. Shelton's pockets, demanding "the cheese" and threatening to kill Mr. Shelton. Mr. Shelton testified that he had $550 in cash, which the Defendant took.

Mr. Shelton did not know either of the two men who robbed him. He subsequently identified the man on the bicycle from photographs he reviewed at the police station which were produced by the police department based on Mr. Shelton's description of the man. The man identified by Mr. Shelton was Mario Woodard, a juvenile. Mr. Shelton testified that he identified the Defendant from another photo line-up produced by the police at a later time.

Mario Woodard testified at the Defendant's trial. He stated that he knew the Defendant prior to the robbery, and saw the robbery take place as he was riding by on his bicycle. He testified that he saw the Defendant holding a gun and saw the Defendant rob the victim of money. Mr. Woodard testified that he was "sure" it was the Defendant.

Detective Shellie Kendall Malone testified at trial that she investigated the robbery. She met with Mr. Shelton on March 20, 1997, and took descriptions of the two men involved in the robbery. She entered the relevant information into the computer and began generating photographs of men who matched the data. Attempting to identify the older suspect, Mr. Shelton initially viewed 2,022 photographs but did not identify a suspect. Detective Malone then began trying to identify the younger suspect, inputting the relevant data for him. Mr. Shelton reviewed 175 photographs and identified Mario Woodard. Detectibe Shelton testified that Mr. Shelton expressed no uncertainty about his identification of Mario Woodard.

Woodard was subsequently arrested and agreed to cooperate with the police. He identified the Defendant as the other suspect. On May 1, 1997, Detective Malone again met with Mr. Shelton and showed him a photo line-up of six men. One of the photos was of the Defendant. Detective Malone testified that, upon viewing the line-up, Mr. Shelton "immediately pointed to the picture of the [D]efendant." Detective Malone stated that Mr. Shelton "was certain" of his identification. Detective Malone also testified that the Defendant's residence was located two blocks from the scene of the robbery.

The State also introduced at trial a transcript of Mr. Shelton's testimony at a suppression hearing held on September 23, 1998. During the suppression hearing, defense counsel was present and cross-examined Mr. Shelton. Mr. Shelton testified that he identified the Defendant as the man who robbed him from a photo line-up of six persons. He further identified the Defendant in the courtroom. He testified that Detective Malone did nothing to indicate to him that the Defendant's photo was a photo of the man who robbed him.

During the preliminary hearing, Mr. Shelton testified that he had joined the armed services and would be reporting for basic training in August 1997. In January 2000, a few days before the Defendant's first trial date, the State filed a motion seeking to declare Mr. Shelton unavailable and requesting the court to allow his prior testimony to be admitted at trial. In support of its motion, the State filed a letter dated January 6, 2000 from Captain Elizabeth W. Watson, Mr. Shelton's company

commander.[1] The letter states that Mr. Shelton was at that time stationed in Germany, but had twice been AWOL. For that reason, Captain Watson would "not support him attending this court case." In response to the State's motion, the trial court ordered a transcript of Mr. Shelton's suppression hearing testimony to be prepared. The trial was also continued until May 22, 2000.

On April 14, 2000, the State filed a second motion to have Mr. Shelton declared unavailable and requesting that his prior testimony be admitted. Attached to this second motion was another letter from Captain Watson stating that Mr. Shelton would be deploying to Kosovo for six months on April 28, 2000, and that he would be unavailable for trial. The trial court granted this motion and ruled that the State would be able to introduce Mr. Shelton's testimony at the preliminary hearing and at the suppression hearing as substantive evidence at the Defendant's trial.

The Defendant's trial was again continued. A few days before the new trial date of January 8, 2001, the State filed a third motion to declare Mr. Shelton unavailable. This motion states, in pertinent part, that:

> 6. Around the beginning of November [2000], Mr. Shelton returned to Germany from Kosovo. He immediately began having discipline problems including being absent-without-leave.
>
> 7. From conversations with Mr. Shelton's commander prior to the Christmas holidays, the State learned that Mr. Shelton would not be allowed to travel and in fact, did not wish to travel.
>
> 8. On January 2, 2001, the State learned that the situation had changed. Mr. Shelton was willing to travel if he could go through Atlanta, Georgia. His commander stated that he would be allowed to travel, but it was too late for any flights through Atlanta. Since that date, the State has been unable to contact Mr. Shelton.
>
> The State respectfully submits that Mr. Shelton is beyond the reach of Tennessee's subpoena power. Only by his full cooperation and mature decisions and behavior on his part could the logistical problem of getting Mr. Shelton to Nashville for this trial be solved. Because of his location and behavior, the problem remains unsolved. The State of Tennessee still wishes to prosecute [the Defendant] and asks that the Court grant this motion.

---

[1] The letter was filed as an exhibit with the court, apparently during a hearing. The exhibit label on the letter indicates that it was introduced by the State "to continue the trial date." The technical record does not contain a concomitant motion to continue, and, based on the dates on the relevant documents, we assume the letter was used in conjunction with the State's motion to declare Mr. Shelton unavailable (which may have been orally amended to include a motion to continue).

The record contains no indication of what, if any, additional proof was submitted in support of this third motion. The trial court granted the State's motion and admitted Mr. Shelton's prior testimony at trial pursuant to Tennessee Rule of Evidence 804(b)(1). In pertinent part, that rule provides that a witness's prior testimony at another hearing in the same proceeding is not excluded by the hearsay rule if (1) the witness is "unavailable" and (2) the party against whom the testimony is substantively offered had both an opportunity and a similar motive to develop the unavailable witness's testimony by direct, cross, or redirect examination. See Tenn. R. Evid. 804(b)(1).

The Defendant now contends that the trial court's admission of Mr. Shelton's prior testimony as substantive evidence at his trial violated his constitutional rights to confront his accusers. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."); Tenn. Const. art. I, § 9 ("That in all criminal prosecutions, the accused hath the right . . . to meet the witnesses face to face . . . ."). The Defendant argues that Mr. Shelton was available by the time the trial was actually held on January 8, 2001, and that the State "filed its third motion to declare the witness unavailable because it would have been troublesome to bring the witness from Germany for the purpose of testifying." The State responds that the trial court acted correctly.

Our supreme court has declared that the same standards and criteria apply to both the United States and Tennessee Constitutions' rights of confrontation. See State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986). Both provisions "restrict[] the range of admissible hearsay in two ways. First, the admission of the hearsay testimony must be necessary, i.e., the declarant must be unavailable. Second, once the declarant is shown to be unavailable, some indicia of reliability must be shown." Id.[2] With respect to the first prong, "it must be shown that the [witness] whose prior testimony is offered at trial is truly 'unavailable' after a good faith effort by the prosecutorial authorities to obtain his [or her] presence." State v. Arnold, 719 S.W.2d 543, 548 (Tenn. Crim. App. 1986). See also Tenn. R. Evid. 804(a)(5) ("'Unavailability of a witness' includes situations in which the declarant . . . [i]s absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process[.]") Proof of the witness's unavailability must consist of more than the prosecutor's own statements to the court. See State v. Armes, 607 S.W.2d 234, 237 (Tenn. 1980). We will uphold the trial court's determination that a witness is unavailable absent an abuse of discretion. See Hicks v. State, 490 S.W.2d 174, 179 (Tenn. Crim. App. 1972).

Under the facts and circumstances of this case, we conclude that the trial court did not abuse its discretion in declaring Mr. Shelton to be unavailable for the Defendant's trial on January 8, 2001. Although the record before us contains no additional proof in support of the State's third motion, the first two motions were accompanied by letters from Mr. Shelton's commanding officer indicating the difficulties with securing Mr. Shelton's attendance at trial. The second letter from Captain

---

[2]As the Causby court noted, a third requirement -- that the evidence be neither crucial nor devastating -- was applied in State v. Henderson, 554 S.W.2d 117, 119 (Tenn. 1977) and State v. Armes, 607 S.W.2d at 238-39. The Causby court determined that this requirement need not be met "in the case of such a well[-]established hearsay exception as former testimony." State v. Causby, 706 S.W.2d at 631 n.1.

Watson indicates that Mr. Shelton was scheduled to be in Kosovo through October 2000. The prosecuting attorney's representations in the third motion, though unsubstantiated, are consistent with the inference in Captain Watson's second letter that Mr. Shelton would be returning to Germany after his tour of duty in Kosovo. Germany is without the trial court's subpoena power. See Tenn. R. Crim. P. 17(e) ("A subpoena requiring the attendance of a witness at a hearing or trial may be served any place within the state.") (emphasis added). The trial court had already continued the Defendant's trial numerous times. We find no abuse of discretion in the trial court's determination that Mr. Shelton was, again, unavailable for trial in January 2001. This issue is, accordingly, without merit.

We turn now to the second prong of the admissibility of hearsay statements vis a vis the Confrontation Clause: that the proffered statements contain some indicia of reliability. See State v. Causby, 706 S.W.2d at 631. "The indicia of reliability requirement is met by those hearsay exceptions resting upon such solid foundations that admission of virtually any evidence within them comports with the right of confrontation." Id. Our supreme court has concluded that "the former testimony exception to the hearsay rule rests upon such a solid foundation." Id.[3] Accordingly, once the trial court determined Mr. Shelton to be unavailable, his prior sworn testimony at the preliminary hearing and the suppression hearing became admissible as substantive evidence at the Defendant's trial. See id. The Defendant's challenge to the trial court's ruling on the admissibility of Mr. Shelton's prior testimony is therefore without merit.[4]

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

---

[3]We note that the Causby court adopted Federal Rule of Evidence 804(b)(1) as a statement of the (then) current law in Tennessee for the admissibility of prior testimony. See State v. Causby, 706 S.W.2d at 631. As quoted by the Causby court, the federal rule and Tennessee's present hearsay exception for prior testimony are substantively identical. Compare id. with Tenn. R. Evid. 804(b)(1).

[4]The Defendant does not argue that he lacked either the opportunity or a similar motive to cross-examine Mr. Shelton at the prior hearings. Cf. Tenn. R. Evid. 804(b)(1). As set forth above, the Defendant was represented by counsel at both hearings and defense counsel cross-examined Mr. Shelton at both hearings. The examinations focused on Mr. Shelton's identification of the Defendant. Indeed, the suppression hearing was held in response to the Defendant's pre-trial motion to suppress Mr. Shelton's identifications of the Defendant. We conclude that the issues in the prior proceedings were sufficiently similar to those at trial that a similar motive for cross-examination existed, so as to satisfy the prerequistes of admissibility under Tennessee Rule of Evidence 804(b)(1). See State v. Curtis Lee Majors, No. 01C01-9602-CR-00076, 1997 Tenn. Crim. App. LEXIS 732, at *14-15 (Nashville, July 30, 1997) (holding that former testimony was properly admitted under Rule 804(b)(1) where the ultimate issue in question at preliminary hearing and trial was whether the defendant was the person who committed the robbery).