# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 3, 2009

## STATE OF TENNESSEE  v. DEVON O'NEAL WIGGINS

**Direct Appeal from the Circuit Court for Dyer County**
**No. 07-CR-461     Russell Lee Moore, Judge**

---

**No. W2008-01078-CCA-R3-CD  - Filed June 22, 2010**

---

The Defendant-Appellant, Devon O'Neal Wiggins, was convicted by a Dyer County jury of sale of cocaine over 0.5 grams, a Class B felony; possession of cocaine under 0.5 grams with intent to sell or deliver, a Class C felony; possession of marijuana under 0.5 ounce, a Class A misdemeanor; and evading arrest, a Class E felony.  He was sentenced as a Range III, persistent offender, to thirty years for the sale of cocaine over 0.5 grams, fifteen years for the possession of cocaine under 0.5 grams, eleven months and twenty-nine days for the possession of marijuana, and six years for the evading arrest conviction.  He was ordered to serve the above sentences concurrently to each other, but consecutively to another unrelated case. On appeal, Wiggins argues: (1) the evidence was insufficient to support his convictions for sale and possession of cocaine; (2) the testimony of a State's expert witness concerning an exemplar graph violated his right of confrontation; (3) the trial court erred by not charging the jury on the offense of sale of a counterfeit controlled substance; (4) Wiggins' prosecution for possession of marijuana was not commenced within the one-year statute of limitations; (5) the trial court improperly commented upon the evidence; (6) the State committed prosecutorial misconduct in its closing argument; (7) the sentence imposed by the trial court for sale of cocaine was excessive; and (8) cumulative error necessitates reversal of Wiggins' convictions.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

James E. Lanier, District Public Defender; H. Tod Taylor, Assistant Public Defender, Dyersburg, Tennessee, for the Defendant-Appellant, Devon O'Neal Wiggins.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The following proof was adduced at Wiggins' trial on January 17, 2008. Shelly Essary testified that she was recruited by the Dyersburg Police Department to make a controlled drug purchase from Wiggins. Essary had several pending charges, and she hoped to receive leniency through her cooperation. On the night of October 27, 2005, under the direction of the Dyersburg police, Essary made a monitored phone call to Wiggins from a convenience store. She arranged for Wiggins to meet her at a car wash across the street from the convenience store. Essary told Wiggins that she wanted to purchase one-hundred dollars worth of crack cocaine. After the phone call ended, the officers searched Essary to make sure that she did not have any drugs or money in her possession. The officers then gave her one-hundred dollars that was previously photocopied. She walked across the street to the car wash. She waited around fifteen minutes before a vehicle pulled into the car wash and rolled down its window. Essary testified that she handed Wiggins one-hundred dollars and was given a little bag that contained a rocky substance in exchange. The vehicle then drove away from the car wash, and Essary walked back to the convenience store. She gave the bag to an officer, and she was again searched for drugs and money.

Essary testified that she was paid twenty-five dollars for her work with the Dyersburg Police Department on the night of October 27. She stated that she made another unrelated controlled drug purchase with the department. On cross-examination, Essary testified she received leniency on several pending charges due to her cooperation with the police. Two charges were dismissed: a felony charge for possession of contraband in a penal institute and a forgery charge. She also received reduced sentences for several other felonies. Essary acknowledged that she has an extensive criminal history, including convictions for burglary, theft, and shoplifting.

Officer Sterlin Wright of the Dyersburg Police Department testified that he was parked near the car wash when he received the signal to arrest Wiggins. He pulled behind Wiggins' vehicle and activated his emergency lights. Officer Wright said Wiggins did not pull over, but began to accelerate. Officer Wright stated that Wiggins ran a stop sign. Wiggins attempted to throw something out of his window; however, this attempt failed because his window was rolled up. Officer Wright testified that Wiggins lost control of his vehicle and began driving on the left and right banks of the road. He eventually pulled over and tried to run away. Wiggins ran for about thirty yards before he was apprehended. While in pursuit, Officer Wright testified that a handgun fell from Wiggins' person.

Officer Eric Larson of the Dyersburg Police Department testified that he rode in the vehicle driven by Officer Wright. Officer Larson corroborated Officer Wright's testimony that Wiggins accelerated when the emergency lights were activated. Officer Larson also said that Wiggins ran a stop sign, attempted to throw something out of his window, and drove

erratically on and off the road. After Wiggins was apprehended, Officer Larson searched Wiggins and found cash and two small bags of a substance appearing to be marijuana. Officer Larson also searched the interior of Wiggins' car where he found digital scales and a small bag containing a rocky substance appearing to be crack cocaine.

Sergeant Todd Thayer of the Dyersburg Police Department testified that he assisted in the controlled drug purchase. He photocopied the one-hundred dollars that was given to Essary to make the purchase. Sergeant Thayer did not see the purchase take place; however, Essary wore an audio transmitter that allowed him to hear what transpired. After the purchase was completed, Essary returned to Sergeant Thayer's vehicle, which was parked at the convenience store. He testified that she gave him a bag containing a rocky substance that appeared to be crack cocaine. Sergeant Thayer then drove to the scene where Officers Wright and Larson had Wiggins in custody. Sergeant Thayer was given the items found in Wiggins' vehicle and in Wiggins' possession. These items included two hundred and sixty dollars, two bags of a substance appearing to be marijuana, a bag containing a substance appearing to be crack cocaine, a handgun, and digital scales. He compared the serial numbers on the dollar bills taken from Wiggins to those that were photocopied. He determined that the serial numbers matched the one-hundred dollars found in Wiggins' possession. Sergeant Thayer testified that digital scales are commonly used by cocaine dealers to weigh their drugs.

A forensic scientist for the Tennessee Bureau of Investigation (TBI) analyzed the substance sold to Essary and the substance found in Wiggins' vehicle. She conducted two tests to determine if the substances were cocaine. She first performed a presumptive test, which involves dropping a chemical on the tested substance and looking for a change in coloration. The forensic scientist then conducted a confirmatory test, which requires the use of a foyer transform infrared spectrometer. This instrument produces a graph that shows the peaks of the tested substance. The forensic scientist compares the peaks of the tested substance to those of a known standard of cocaine. If the peaks match, the substance is cocaine. The forensic scientist testified that the instrument is generally accepted within the scientific community. She stated, however, that the graph of the known standard of cocaine (the "exemplar graph") was created in 1996 at the Tennessee Bureau of Investigation before she started working there. After performing the presumptive test and the confirmatory test, she concluded that both substances were cocaine. She determined that the substance sold to Essary weighed 1.3 grams, and the substance found in Wiggins' vehicle weighed 0.2 grams. The forensic scientist also performed a microscopic examination of the leafy substance found in Wiggins' possession. She determined that the substance was marijuana and that it weighed 2.5 grams.

## ANALYSIS

I. **Sufficiency of the Evidence**. Wiggins claims the evidence was insufficient to

convict him of sale of cocaine over 0.5 grams and possession of cocaine under 0.5 grams with intent to sell or deliver. He argues the evidence does not show that he sold cocaine because only Essary witnessed the drug purchase. Wiggins contends that the evidence is therefore insufficient because Essary's testimony was biased and untrustworthy. He also argues that the State failed to prove that he possessed cocaine because no officer saw or found Wiggins in physical possession. In response, the State argues that the evidence was sufficient to support Wiggins' convictions. We agree with the State.

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court has often stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Id. (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 442 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. This Court does not reweigh or reevaluate the evidence." Bland, 958 S.W.2d at 659 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)).

Our review of the record shows that there was more than sufficient proof for a rational juror to have found that Wiggins knowingly sold over 0.5 grams of cocaine to Essary. Sergeant Thayer testified that Essary made a monitored phone call to Wiggins, during which Wiggins agreed to meet Essary at a car wash. Prior to meeting Wiggins, Essary was searched and given one-hundred dollars of previously photocopied money. Essary testified that she gave Wiggins the money and received a small bag in return that contained a rocky substance. A forensic scientist testified that the substance in the bag was 1.3 grams of cocaine. After the officers in this case activated their emergency lights to arrest Wiggins, he attempted to evade arrest in his car and on foot. When he was ultimately apprehended, the buy money was recovered from his hands by one of the officers. The serial numbers of the money recovered from Wiggins hands matched the serial numbers of the money that was given to Essary to use in the controlled drug purchase. Wiggins' argument is no more than an attack on Essary's credibility. Issues concerning a witness' credibility are for the jury, and not this court, to determine. Accordingly, Wiggins is not entitled to relief.

We further conclude that a rational jury could have found that Wiggins knowingly

possessed less than 0.5 grams of cocaine with intent to sell or deliver. Officer Larson testified that he searched the interior of Wiggins' vehicle immediately after Wiggins was arrested. Officer Larson stated that he found digital scales and a small bag that contained a substance appearing to be crack cocaine. The forensic scientist testified that the substance was 0.2 grams of cocaine. Sergeant Thayer stated that digital scales are commonly used by cocaine dealers to weigh their drugs. The record indicates that Wiggins was alone in his vehicle at the car wash and while he attempted to evade arrest. Based on this proof, there was sufficient evidence to show that Wiggins possessed less than 0.5 grams of cocaine with the intent to sell or deliver. Accordingly, he is not entitled to relief on this issue.

**II.    Confrontation Clause**. Wiggins argues the admission of the forensic scientist's testimony concerning the exemplar graph violated his right of confrontation under the Sixth Amendment, as incorporated under the Fourteenth Amendment. Wiggins contends that he had a right to confront the person who created the graph because it was used by the forensic scientist in forming her opinion. The State claims the trial court properly found that the forensic scientist's testimony did not violate Wiggins' right of confrontation. The State asserts that the forensic scientist could testify about the exemplar graph because she was an expert witness and the graph's data was sufficiently reliable.

We begin our analysis of this issue by recognizing that "the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007). "A trial court abuses its discretion only when it applies an incorrect legal standard or makes a ruling that is "'illogical or unreasonable and causes an injustice to the party complaining.'" Id. (quoting State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006)).

A defendant's right of confrontation is protected by the Sixth and Fourteenth Amendments of the United States Constitution and Article I section 9 of the Tennessee Constitution. The language in the Sixth Amendment differs from the language in Article 9; however, the Tennessee Supreme Court has "held that the 'same standards and criteria' apply when determining whether the evidence satisfies both the state and federal constitutions." Lewis, 235 S.W.3d at 144 (citing State v. Armes, 607 S.W.2d 234, 236 (Tenn. 1980)).

In Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), the United States Supreme Court defined the current approach for judging the admissibility of hearsay statements under the Confrontation Clause. The Court departed from its holding in Ohio v. Roberts, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980), which focused on the reliability of the hearsay evidence. In Crawford, the Court looked to whether the hearsay evidence was testimonial. Crawford, 541 U.S. at 59. The Court concluded that testimonial statements of witnesses absent from trial are not admissible under the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the

declarant.  Id.

The Tennessee Supreme Court has held that Crawford does not extend to hearsay evidence relied on by expert witnesses.  Lewis, 235 S.W.3d at 151.  In Lewis, an expert witness testified about the results of a DNA test that she had not performed.  The Court cited an appellate decision from the District of Columbia which stated that "Crawford . . . did not involve expert witness testimony and thus did not alter an expert witness's ability to rely on (without repeating to the jury) otherwise inadmissible evidence in formulating his opinion under Federal Rule of Evidence 703."  Id.  The Court in Lewis also quoted from a law review article that stated, "Most courts have concluded that the Confrontation Clause is satisfied if the defendant has an opportunity to cross-examine the expert because his opinion is in evidence-not the underlying facts."  Id.  The Court concluded that because the expert's testimony was merely an evaluation of data, which was not admitted into evidence, it did not violate the defendant's right of confrontation.  Id.

In Melendez-Diaz v. Massachusetts, decided after the briefs were filed in this case, the United States Supreme Court further addressed the Confrontation Clause and applied Crawford to the testimony of expert witnesses. 129 S. Ct. 2527 (2009).  In Melendez-Diaz, three affidavits from a forensic laboratory were admitted into evidence.  These affidavits contained the results of forensic analysis which showed that substances seized by the police contained cocaine.  Id. at 2531.  The Court determined that the affidavits were testimonial statements, thus rendering the affiants subject to the defendant's right of confrontation.  Id. at 2532.  The Court reasoned that the affidavits were testimonial because they were "made for the purpose of establishing or proving some fact"; namely, that the substances possessed by the defendant were cocaine.  Id. (citing Crawford, 541 U.S. at 51).  The affidavits were also made with the knowledge that they would be available for use at trial.  Id.  However, the Supreme Court explicitly provided, "we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." Id. at 2532 n. 1.

In the present case, the trial court did not address whether the exemplar graph was testimonial. However, it found that Crawford was inapplicable because the forensic scientist was an expert witness.  The trial court further determined that the exemplar graph did not violate Wiggins' right of confrontation because it was sufficiently reliable based on the forensic scientist's testimony.  Although Melendez-Diaz rejected the trial court's reasoning for determining that Crawford was inapplicable, we conclude, based on the above authority, that the trial court properly admitted the forensic scientist's testimony concerning the exemplar graph.  The trial court properly determined that the data from the exemplar graph was reliable. The forensic scientist testified that the graph was generally accepted within the scientific community and that it had been used by the Tennessee Bureau of Investigation since 1996. Additionally, the exemplar graph was not admitted into evidence.  Because the

forensic scientist actually performed the examination of the substance and was available for cross-examination, Wiggins' right of confrontation was not violated. See State v. Kennedy, 7 S.W.3d 58, 67 (Tenn. Crim. App. 1999) ("[W]e conclude that the admission of an expert's opinion based on hearsay evidence not in itself admissible does not violate the Confrontation Clause of either the United States nor the Tennessee Constitution[] so long as the expert providing the opinion is available for cross-examination."). Wiggins is not entitled to relief on this issue.

**III. Jury Charge**. Wiggins argues that the trial court erred by denying his request to charge the jury on the offense of selling a counterfeit controlled substance. Wiggins acknowledges that this offense is not a lesser-included offense of any of the charged offenses; however, he claims the denial of his request violated his constitutional right to a complete charge. The State contends the trial court properly denied Wiggins' request, as the trial court was under no duty to instruct the jury on that offense.

A defendant has a "'constitutional right to a correct and complete charge of the law.'" State v. Litton, 161 S.W.3d 447, 458 (Tenn. Crim. App. 2004) (quoting State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990), superseded by statute on other grounds as stated in State v. Reid, 91 S.W.3d 247, 291 (Tenn. 2002)). Accordingly, a trial court has a duty to give "a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (quoting State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). When reviewing challenged jury instructions, we must look at "the charge as a whole in determining whether prejudicial error has been committed." In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987) (citation omitted); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).

Upon request, a trial court is required under certain circumstances to charge the jury on lesser-included offenses. See T.C.A. § 40-18-110(a). This court has held, however, that a trial court is under no duty to instruct the jury when the requested charge is not a lesser-included offense. See State v. Harold Holloway, No. E2004-00882-CCA-R3-CD, 2005 WL 1981791, at *10 (Tenn. Crim. App., at Knoxville, Aug. 16, 2005); State v. Reginald Merriweather, Nos. W1999-02050-CCA-R3-CD, W2001-02206-CCA-RM-CD, 2002 WL 1482742, at *12 (Tenn. Crim. App., at Jackson, Feb. 11, 2002). Here, Wiggins was not indicted for the requested charge, and it is not a lesser-included offense of any of the charged offenses. The trial court was under no duty to charge the jury on the offense of selling a counterfeit controlled substance. Therefore, the trial court did not err in denying Wiggins' request.

**IV. Statute of Limitations**. Wiggins claims his prosecution for possession of marijuana was barred because the indictment was filed over one year after the offense occurred. The State argues the limitations period had not expired. We agree with the State.

Here, Wiggins was charged with possession of marijuana, a Class A misdemeanor. With some exceptions, "all prosecutions for misdemeanors shall be commenced within the twelve (12) months after the offense has been committed[.]" T.C.A. § 40-2-102 (2006). In order to resolve whether the prosecution is barred by the statute of limitations, we must first determine when the prosecution was commenced. Our law provides:

> A prosecution is commenced, within the meaning of this chapter, by finding an indictment or presentment, the issuing of a warrant, binding over the offender, by the filing of an information as provided for in chapter 3 of this title, or by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense.

T.C.A § 40-2-104; see also State v. Nielsen, 44 S.W.3d 496, 499 (Tenn. 2001).

In regard to this issue, we must first note that Wiggins failed to object with a pre-trial motion or include this issue in his motion for new trial. Ordinarily, this would constitute waiver of this issue. However, because we have previously held that the statute of limitations is not waived by failure to raise an objection by pre-trial motion, nor by failure to include the issue in a motion for new trial, see State v. Seagraves, 837 S.W.2d 615, 618 (Tenn. Crim. App. 1992), we will review this issue as presented on appeal.

The record shows the date of the possession of marijuana offense as October 27, 2005. The prosecution was commenced and the statute of limitations clock was stopped one day later, on October 28, 2005, when the affidavit of complaint and arrest warrant was issued for Wiggins. See State v. William Michael Dial, No. 87-292-III, 1988 WL 119329, at *1 (Tenn. Crim. App., at Nashville, Nov. 10, 1988); see also State v. Tait, 114 S.W.3d 518, 522 (Tenn. 2003); T.C.A. § 40-2-104 (2005). On April 10, 2006, the first indictment including the charge of misdemeanor possession of marijuana was returned by the grand jury[1] and dismissed eight months later, on December 8, 2006, by entry of a nolle prosequi order. When the State nolled the marijuana charge, the statute of limitations clock recommenced. State v. Fred R. Parrish, No. 01-C-01-9207-PB00239, 1994 WL 17511, at *1 (Tenn. Crim. App., at Nashville, Jan. 20, 1994). Because "[t]he statute of limitations applies only to the period between the commission of an offense and the date 'prosecution is begun,'" the State had eleven months and twenty-nine days from December 8, 2006, to prosecute Wiggins on the marijuana charge. See State v. Ferrante, 269 S.W.3d 908, 911 (Tenn. 2008) (citing State ex rel. Lewis v. State, 447 S.W.2d 42, 43 (Tenn. Crim. App. 1969)). On August 13, 2007, well within the limitations period, the State filed the instant indictment charging the 2005

---

[1] The State filed a motion to supplement the record in this case with the original indictment filed against Wiggins, which was granted by this court. However, we note that only the first page of the indictment is included in the supplemental record and does not reflect that a true bill was returned.

misdemeanor possession of marijuana. Wiggins is not entitled to relief on this issue.

**V.    Comment by Trial Court**. Wiggins claims the trial court erred by improperly commenting on the evidence in front of the jury. Before the jury left the courtroom to deliberate, the trial court stated, "You can't take the drugs back there with you." Wiggins argues that this comment undermined his primary defense that the two exhibits at issue were not cocaine. The State contends that this issue is waived because Wiggins did not raise a contemporaneous objection. The State also asserts that Wiggins failed to show that the comment constituted reversible error.

The Tennessee Constitution prohibits the trial court from commenting on the evidence in a case. Tenn. Const. art. VI, § 9 ("The judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."). A new trial will only be granted, however, if the trial court's comments were prejudicial to the defense. Mercer v. Vanderbilt Univ., Inc., 134 S.W.3d 121, 134 (Tenn. 2004). The comments are assessed within the overall context of the case to determine whether they were prejudicial, or merely harmless error. Id. (citing State v. Caughron, 855 S.W.2d 526, 536-37 (Tenn. 1993)).

As an initial matter, we note that Wiggins did not raise a contemporaneous objection to the trial court's comment as required by Tennessee Rule of Appellate Procedure 36(a). Failure to comply with this basic rule will ordinarily constitute a waiver on this issue. See State v. Roy D. Wakefield, No. M2005-01136-CCA-R3-CD, 2006 WL 1816323, at *15 (Tenn. Crim. App., at Nashville, June 29, 2006). Despite Wiggins' failure to raise a contemporaneous objection, we have reviewed the record in this case and conclude that the trial court's comment was harmless. The trial court should not have stated that the exhibits were "drugs" because that was a contested issue; however, this error did not sufficiently prejudice Wiggins' defense. The trial court made the comment in the context of explaining what exhibits could be taken to the jury room. After making the comment, the trial court clarified that the exhibits were the "alleged drugs." While we agree with Wiggins that the comment was improper, it does not rise to the level of prejudice that would require granting a new trial. Wiggins is not entitled to relief on this issue.

**VI. Closing Argument**. Wiggins claims that comments by the State during closing argument violated his right not to testify under the Fifth Amendment, as incorporated under the Fourteenth Amendment. The prosecutor stated, "What you have not heard is any witness, expert or otherwise, testify that those substances are anything other than cocaine. That's what you haven't heard. Not a single person said that." Wiggins argues that these comments violated his right not to testify because he claims "the only individual able to rebut the State's proof was the defendant himself." In response, the State contends the prosecutor's comments were not in error.

Arguments directed at a defendant's failure to testify are improper under the Fifth

Amendment. Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233 (1965). However, "prosecutorial misconduct does not amount to reversible error absent a showing that it has affected the outcome to the prejudice of the defendant." State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001) (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). In order to be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996) (citing Harrington v. State, 385 S.W.2d 758, 759 (1965)).

Here, the prosecutor did not improperly comment on Wiggins' decision not to testify. The comments were directed solely at Wiggins' failure to contradict the State's proof about whether the substances were cocaine. The Tennessee Supreme Court has stated, "It has long been established that a district attorney general may argue that the state's evidence is uncontradicted." State v. Thornton, 10 S.W.3d 229, 235 (Tenn. 1999) (citing State v. Rice, 638 S.W.2d 424, 427 (Tenn. Crim. App. 1982)). The prosecutor did not specifically target Wiggins' failure to testify, as someone other than Wiggins, such as an expert witness, could possibly have rebutted the State's proof about whether the substances were cocaine. Wiggins is not entitled to relief on this issue.

**VII. Sentencing**. Wiggins argues that the trial court's imposition of the maximum sentence for each felony conviction in this case was excessive. Although he concedes his status as a Range III, persistent offender, he maintains that the "advisory guidelines suggest that the trial court should have imposed an effective sentence of twenty (20) years[.]" The State contends the trial court properly imposed the maximum sentence after determining two enhancement factors were applicable.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Our review is de novo, without a presumption of correctness, if the trial court applied inappropriate mitigating or enhancement factors or otherwise failed to follow the principles of the Sentencing Act. State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008). The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Commission Comments.

The record shows that the trial court considered the applicable sentencing principles, as well as the relevant facts and circumstances; therefore, our review of sentencing is de novo with a presumption that the trial court's determinations are correct. See T.C.A. § 40-35-401(d) (2005); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

The Tennessee Supreme Court has stated that the 2005 Amendments to the Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Carter, 254 S.W.3d at 344. In sentencing a defendant, the trial court must consider the sentencing guideline that suggests an adjustment to the defendant's sentence when enhancement or mitigating factors are present; however, these factors under the guideline are merely advisory rather than binding upon a trial court's sentencing decision. Id.; see also T.C.A. § 40-35-210 (2006). The weight given to each enhancement or mitigating factor is left to the sound discretion of the trial court. Id. Thus, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

Sale of cocaine over 0.5 grams is a Class B felony; thus, the range of punishment for a Range III, persistent offender is twenty to thirty years. For the possession of cocaine less than .5 grams with the intent to deliver, a Class C felony, Wiggins was subject to a range of punishment of ten to fifteen years. For the felony evading arrest conviction, Wiggins was subject to a four to six year range of punishment. The trial court sentenced Wiggins to thirty years for the sale of cocaine over 0.5 grams; fifteen years for the possession of less than .5 grams of cocaine; and six years for the felony evading arrest. The trial court ordered the sentences to be served concurrently, for an effective sentence of thirty years.

At the sentencing hearing, the trial court determined that two enhancement factors were satisfied under Tennessee Code Annotated section 40-35-114. The trial court found that enhancement factor (1) was met based on Wiggins' extensive criminal record. T. C. A. §40-35-114(1). The pre-sentence report, which was admitted as an exhibit, shows that Wiggins has a criminal history consisting of three felony convictions for sale of cocaine, two felony convictions for sale of cocaine in a drug free zone, aggravated assault, misdemeanor criminal impersonation, evading arrest, driving on a revoked license, and failure to appear. The trial court also determined that enhancement factor (13) was satisfied because Wiggins sold the cocaine while on probation. T.C.A. §40-35-114(13)(C). The trial court noted that

given Wiggins' criminal record, "[r]ehabilitation does not appear at all possible and less restrictive measures and incarceration have been unsuccessful." The trial court did not state whether any mitigating factors were applicable.

Wiggins' sole argument is that "[t]wo enhancement factors do not necessitate the imposition of the maximum sentence . . ." In effect, his challenge is to the weight the trial court afforded those factors, which is not subject to review by this court. Carter, 254 S.W.3d at 344. The record supports the trial court's determination that enhancement factors (1) and (13) are applicable. The sentence is also consistent with the sentencing principles and considerations of the Criminal Sentencing Reform Act of 1989. See T.C.A. § 40-35-210(d). Accordingly, Wiggins is not entitled to relief on this issue.

**VIII. Cumulative Error**. Wiggins argues that the cumulative effect of the alleged errors violated his right to a fair trial under the Sixth Amendment. The State claims that reversal is not required because Wiggins failed to establish any error affecting the outcome of the judgment. We agree with the State. Because we have already determined that Wiggins is not entitled to relief on any of the previous issues, we conclude that there is no cumulative error that affected his right to a fair trial.

**Conclusion.** Based on the foregoing, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE