IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 19, 2013

**STATE OF TENNESSEE v. DANIEL E. POTTEBAUM, SR.**

**Appeal from the Criminal Court for Davidson County**
**No. 2002-C-1808     Cheryl Blackburn, Judge**

---

**No. M2012-01573-CCA-R3-PC - Filed June 21, 2013**

---

The Petitioner, Daniel E. Pottebaum, Sr., contends that he received the ineffective assistance of counsel at his retrial and cites the following bases in support of that contention: (1) trial counsel's failure to object to the Petitioner's testimony from his first trial being read into the record at his second trial where he chose not to testify; (2) trial counsel's failure to move for a severance of the domestic assault offense from the unrelated sexual abuse offenses; and (3) trial counsel's failure to object to the jury instruction on flight. After reviewing the record and the applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

James O. Martin, III, Nashville, Tennessee (on appeal); and David Christensen, Brentwood, Tennessee (at post-conviction hearing); for the appellant, Daniel E. Pottebaum, Sr.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General; for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Petitioner was convicted by a jury of the following offenses: two counts of rape

of a child (J.P.[1]), two counts of aggravated sexual battery (J.P.), and assault (E.P.[2]). On appeal, this court reversed the trial court, holding that "the trial court committed prejudicial error by not allowing [the Petitioner] to cross-examine the victim on the prior accusation of sexual abuse" and "in admi[tting a] tape-recorded telephone conversation[,]" and the case was remanded for a new trial. State v. Daniel E. Pottebaum, No. M2004-02733-CCA-R3-CD, 2006 WL 1222710 (Tenn. Crim. App. May 5, 2006). A detailed summary of the evidence supporting these convictions and this court's analysis, reversing the trial court and granting a new trial, can be found in this court's opinion on direct appeal. Id. On remand, the Petitioner was again convicted of all offenses as charged and sentenced to serve seventy-four years in the Department of Correction (DOC), and the convictions were affirmed on appeal. See State v. Daniel E. Pottebaum, No. M2007-02108-CCA-R3-CD, 2008 WL 5397848 (Tenn. Crim. App. Dec. 30, 2006), perm app. denied (Tenn. June 1, 2009).

On February 23, 2010, the Petitioner filed a pro se petition for post-conviction relief, and an amended petition citing additional grounds for relief was filed after the appointment of counsel. The pro se petition listed the "ineffective assistance of counsel" and "right to a fair trial" as grounds for post-conviction relief.[3] The amended petition cited the following grounds for relief: (1) use of the Petitioner's former testimony from his first trial, violating his right to due process and right not to testify; (2) flight instruction was improperly given to the jury in violation of the Petitioner's due process rights; and (3) ineffective assistance of counsel, citing counsel's failure to object to the introduction of the Petitioner's prior testimony and the flight instruction and counsel's failure to move for a severance of unrelated offenses.[4]

At the post-conviction hearing, the Petitioner's trial counsel testified that he tried both of the Petitioner's cases and that both trials resulted in guilty verdicts. Trial counsel said that he did not recall objecting to the Petitioner's testimony from the first trial being introduced at the second trial. However, trial counsel stated that he believed the testimony was admissible under an exception to the hearsay rule because the Petitioner was not testifying at the second trial. Trial counsel testified that he decided that admission of the redacted statement would be a way for the Petitioner to testify without being subjected to cross-examination. He explained, "if there were grounds to object[,] we decided to waive that

---

[1] This court generally refers to minor victims and their parents by their initials to protect their anonymity.

[2] E.P. is J.P.'s mother.

[3] The Petitioner elaborated on these general issues in the petition but abandoned those arguments on appeal.

[4] On appeal, the Petitioner only pursued the grounds supporting a claim of the ineffective assistance of counsel.

because we felt it was better for him -- for his testimony, for his denials to get before the jury without, you know, leaving that blank there."

Trial counsel stated that he did not file a motion to sever the domestic assault count from the sex abuse counts. He agreed that they were separate cases, separate victims, and separate offense dates. However, he explained,

> that was, again, something that we discussed. And there may very well have been grounds to file such a motion, but part of my strategy was that the fact that he had allegedly been involved in domestic assault with his wife could be used to show her motivation for planting the sex abuse seed in the child.

Trial counsel stated that the Petitioner "trusted what [he] said as far as with the way in which [they] should proceed." Nevertheless, trial counsel admitted that "if the[ cases] had been severed, proof of one crime would not have been admissible in the case with the sex crimes[.]"

When asked whether the trial court instructed the jury as to flight, trial counsel stated, "I don't recall if the Court did or not, and I surely objected to that. If I didn't then . . ." Trial counsel explained,

> It's been a long time . . . , so if the Court did instruct on flight then so be it. But, I mean, the bottom line was is that he took off to Kentucky shortly after discovery that the police were after him. Now, he took off because of the warrant for the domestic assault. . . . Not because of the allegation of the sex abuse. And of course then if we'd severed the cases then you could have argued, well, the instruction on flight could have only been used in the trial on the domestic assault.

Trial counsel agreed that the trial court's flight instruction had been used against the Petitioner on all counts, and he stated, "You're right. There is always things you could look back at and say, maybe I should have done this differently."

On cross-examination, trial counsel stated that he had been practicing as a criminal attorney since 1988 and had tried approximately fifty cases, at least half of which involved child or sexual abuse. Trial counsel said that he had represented people involved in such crimes in a substantial percentage of his cases and that he was well-versed in the issues involving child and sexual abuse because of that experience. Trial counsel stated that, at the first trial, he "put [the Petitioner] on [because he] felt like [the Petitioner's] position of denial, which he always denied it, needed to be made known." However, trial counsel said,

"unfortunately I just don't think he did a very good job in the first trial of withstanding [the prosecutor's] cross-examination." Trial counsel agreed that part of the Petitioner's decision to testify at his first trial was based on the trial court precluding trial counsel from cross-examining J.P. about the allegations she had previously made about her brother molesting her. He elaborated, "You know, in other words trying to get in some things we weren't able to get in early." According to trial counsel, the transcript of the Petitioner's testimony from his first trial was redacted to exclude evidence that had been ruled inadmissible by the Court of Criminal Appeals or that was, otherwise, considered to be improper or prejudicial; it was his strategy to allow the admission of this redacted testimony to present the Petitioner's denial without subjecting him to cross-examination.

The Petitioner also testified at the hearing. He said that he decided to testify at the first trial because the trial court would not allow him to introduce evidence that J.P. had previously brought allegations against her brother "on the same type of charges" the Petitioner faced, and trial counsel thought he might be able to bring that evidence in if he testified. The Petitioner said that he and trial counsel found out that they could not cross-examine J.P. on that issue approximately one to two months before trial and that this changed the way he viewed his defense. He stated that he did not testify at the second trial because the Court of Criminal Appeals ruled that he could cross-examine the victim on the prior allegation, and that was why he initially testified. The Petitioner said that he did not know when he made the decision not to testify at the second trial that his testimony from the first trial would be admissible.

The Petitioner said that he left E.P. and went to Kentucky. He stated that he returned to Nashville before he was arrested for the instant offenses because E.P. called and asked him to look at her car. E.P. told him that something was wrong with her car, and she asked him to stay for a few days to earn money to help her make payments on the car. The Petitioner stated that the police arrived and arrested him within hours of his arrival at E.P.'s house. He said that he did not know there was a warrant for his arrest, but he assumed that the police were there to arrest him for the domestic assault offense even though E.P. had told him that she never called the police regarding that incident. The Petitioner testified that E.P. never mentioned the sexual assault charges during their telephone conversations.

The Petitioner testified that trial counsel never objected to the flight instruction or the admission of the Petitioner's testimony from the first trial. He said that trial counsel discussed the admission of his testimony from the first trial as a trial strategy. According to the Petitioner, trial counsel "mentioned that it might be not good for us. But not bad for us to get my denials in. I mean, it wasn't a strategy 'cause when [trial counsel] brought it up he said that it might not hurt us for me to get my objections in as long as they took out everything that the Court of Criminal Appeals said . . . ."

On cross-examination, the Petitioner admitted that he and trial counsel "discussed as a strategic point that [he] couldn't get into evidence that was excluded by the Court unless [the prosecutor] created the opportunity for that to happen and when that happened [he was] going to jump at that opportunity." He agreed that "the real reason for testifying wasn't to create that opportunity, but to get in the fact that [he] w[as] going to say [he] never sexually abused [his] daughter. [He] wanted to testify about [his] denials first and foremost."

The post-conviction court denied relief via order on June 25, 2012, and issued the following findings. Regarding trial counsel's alleged failure to object to the Petitioner's prior testimony, the post-conviction court stated,

> Trial counsel testified that he did not object because it was part of the defense strategy for Petitioner [to] testify since he was the only person who could provide his version of events and counsel "felt strongly that his position of denial needed to be made known in front of a jury." After observing the intense cross-examination of Petitioner at the first trial, Trial Counsel felt it was to their benefit to have the redacted testimony be admitted; that way Petitioner was able to present his version of events to the jury without being challenged in front of a jury during a live cross-examination. The Court credits Trial Counsel's testimony and defers to the strategy and tactical choice of counsel. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)(courts should defer to the trial strategy or tactical choices of counsel if they are informed ones based upon adequate preparation).

> Further, this Court maintains that Petitioner's first trial testimony, redacted to comply with the appellate ruling, was admissible in the State's case-in-chief since Petitioner asserted his Fifth Amendment right not to testify at the second trial.

In a footnote, the post-conviction court stated that it found "the Petitioner's reliance on the Supreme Court case Harrison v. United States, 392 U.S. 219, 225 (1986)[,] to be misplaced as that case involved a defendant testifying at his first trial after the State introduced three illegally obtained confessions that were declared inadmissible on appeal.

Turning to the flight issue, the post-conviction court stated,

> Petitioner himself testified (at the first trial and this portion was read at the second trial) about the fact he ran away and indicated his departure was due to the domestic fight. . . . Trial Counsel admitted that the jury charge would be applicable to the domestic violence count and had explained

previously the defense trial strategy was to keep the counts together since the theory was the domestic charge provided motivation for the child to make the false sexual abuse allegations.

Although Petitioner maintains he fled solely because of the domestic charges, not only were the counts tried together thereby permitting the instruction, but testimony from other witnesses indicated Petitioner was aware of the sexual assault allegations. . . . Thus, regardless of whether Trial Counsel raised an objection the instruction, sufficient evidence existed to support the instruction, and the Court would have overruled any objection had it been made. Further, the Tennessee Court of Criminal Appeals has stated that

> the flight instruction pointed out to the jury that innocent persons may take flight, and it was up to the jury to determine whether there was flight, the reasons for the flight, and the weight to be given to it. Just as the instruction allowed an inference of guilt from flight, it also instructed that the evidence, facts, and circumstances may show that an innocent person may take flight.

State v. Richardson, 995 S.W.2d 119, 129 (Tenn. Crim. App. 1998).

In light of all of the above, the Court finds that Petitioner has failed to establish by clear and convincing evidence this claim of his petition.

In addressing the final issue, severance, the post-conviction court stated,

Trial Counsel testified that he intentionally did not move to sever the charges because the defense wanted evidence of the domestic assault to be admitted at the trial on the sexual abuse to support their theory that the mother encouraged their child to fabricate the sexual abuse charges; that is, the domestic violence charges were an integral part of the defense against the sexual abuse charges. The Court credits Trial Counsel's testimony and defers to the strategy and tactical choice of counsel. Hellard, 629 S.W.2d at 9. Accordingly, the Court finds that Petitioner has failed to meet his burden to demonstrate that counsel was ineffective or that Petitioner was prejudiced by any alleged deficiencies.

This appeal followed.

ANALYSIS

The Petitioner contends that trial counsel rendered ineffective assistance at his retrial because trial counsel failed to (1) object to the Petitioner's testimony from his first trial being read into the record at his second trial where he chose not to testify, (2) move for a severance of the domestic assault offense from the unrelated sexual abuse offenses, and (3) object to the jury instruction on flight. The Petitioner also contends that trial counsel's strategies should not be given deference as informed ones based on adequate preparation because they were employed in the first trial and had failed; thus, trial counsel was ineffective for using the same tactics in the retrial. The State responds that trial counsel's performance was not deficient and his strategies are entitled to deference because trial counsel (1) made a deliberate, tactical choice not to object to the admission of the Petitioner's prior testimony, allowing the jury to hear the Petitioner's "denials" without subjecting him to cross-examination; (2) decided not to file a severance motion, in furtherance of the defense's theory of the case; and (3) was not in error for failing to object to a flight instruction that was supported by the evidence.

The trial court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See State v. Nichols, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The Petitioner has the burden of establishing that the evidence preponderates against the trial court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the trial court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

*I. Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance was deficient is not enough; rather, the defendant must also show that but for counsel's deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n. 2 (Tenn. 1989).

A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a defendant raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Id. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

*A. Deference to Trial Counsel's Strategies and Tactics*

As a preliminary matter, we address the Petitioner's argument that trial counsel's

strategies should not be given deference as informed ones based on adequate preparation because the strategies were tried at the first trial and had failed. It is well-settled that the fact that a particular strategy failed or even hurt the defense does not alone support a claim of ineffective assistance of counsel. See Cooper, 847 S.W.2d at 528. As the State succinctly argues, the Petitioner's second trial was different from the first because, in remanding the case, this court precluded the admission of damaging evidence presented in the first trial and permitted a line of inquiry regarding false accusations by the victim that was previously prohibited. In addition to that previously excluded evidence being permitted, the Petitioner was able to "testify" – via a redacted transcript from his testimony at the first trial – without being subjected to cross-examination. The Petitioner was allowed to present his theory of the case to the jury absent much of the attack mounted by the prosecution in the first trial. Under these circumstances, we cannot conclude that it was outside the range of competence demanded of attorneys in criminal cases for trial counsel to utilize the same broad strategies employed in the Petitioner's first trial. Because the record reflects that trial counsel's strategies were informed ones based on adequate preparation, we will defer to his tactical decisions.

*B. Counsel's Failure to Object to the Admission of the Petitioner's Prior Testimony*

Generally, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is considered hearsay and is inadmissible. See Tenn. R. Evid. 801(c), 802. However, exceptions to this general rule have been carved out because they "bear sufficient indicia of reliability and trustworthiness to warrant admission." State v. Henry, 33 S.W.3d 797, 802 (Tenn. 2000). One such exception involves a witness's former testimony. See Tenn. R. Evid. 804(b)(1).

Tennessee Rule of Evidence 804(b)(1) governs the admissibility of the former testimony of a witness. It states, in relevant part,

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.

Tenn. R. Evid. 804(b)(1). Under the aforementioned circumstances, a witness's former testimony is admissible, despite their unavailability. Unavailability of a witness is defined in Tennessee Rule of Evidence 804. It includes instances in which the declarant:

> (1) is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement; or

> (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

> (3) demonstrates a lack of memory of the subject matter of the declarant's statement; or

> (4) is unable to be present or to testify at the hearing because of the declarant's death or then existing physical or mental illness or infirmity;

> (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process[.]

Tenn. R. Evid. 804(a). Former testimony admitted under Rule 804(b)(1) is substantive evidence. See State v. Causby, 706 S.W.2d 628, 632 (Tenn. 1986); see also State v. Samuel Armod Winkfield, 2010 WL 796917, *6 (Tenn. Crim. App. March 9, 2010)(citing State v. Stacey Philander Baldon, No. W2000-00524-CCA-R3-CD, 2001 WL 128586, at *5 (Tenn. Crim. App. Feb. 12, 2001)). It is well-settled that the "invocation of the privilege against self-incrimination renders a witness unavailable." State v. Howell, 868 S.W.2d 238, 250 (Tenn. 1993) (citing State v. Armes, 607 S.W.2d 234, 237 (Tenn. 1980)). Because the Petitioner decided not to testify at his second trial, he was considered unavailable, and the post-conviction court ruled that the Petitioner's testimony from the first trial was admissible under this hearsay exception. For those same reasons, we agree.

The Petitioner, relying on Harrison v. United States, 392 U.S. 219 (1968), argues that trial counsel rendered ineffective assistance because trial counsel should have objected to the admission of his testimony as it was unlawfully compelled by the trial court's adverse ruling prohibiting him from cross-examining J.P. about a prior accusation of sexual abuse. The post-conviction court ruled, however, that trial counsel's failure to object was not deficient because the Petitioner's testimony was admissible under Tennessee Rule of Evidence 804(1) and that his reliance on Harrison was misplaced.

In Harrison, the defendant was originally tried on a charge of felony murder. At his first trial, the prosecution introduced three confessions allegedly made by defendant while

in police custody. After the admission of these confessions, the defendant took the stand and testified to his own version of the events. The jury found the defendant guilty. On appeal, the conviction was reversed when the court determined that the confessions admitted at trial had been illegally obtained. Id. at 220. At a second trial, the prosecution did not admit defendant's confessions into evidence but did read into evidence the defendant's testimony from his first trial. The defendant was convicted again, and the conviction was affirmed on appeal. Id. at 221. On appeal to the United States Supreme Court, the Court had to decide whether the testimony from the defendant's first trial was properly admitted against the defendant at his second trial. The Court noted that it did not "question the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." Id. at 222. In so doing, the Court explained that, generally,

> [a] defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him.

Id. The Court then created a narrow exception to the general rule, based upon the facts in that case:

> Here, however, the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby-the fruit of the poisonous tree . . .

Id.

The Court explained that because the confessions had been illegally obtained, "[t]he question is not whether the petitioner made a knowing decision to testify, but why. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." Id. at 223. The burden is on the Government to show that its illegal action did not induce his testimony. Id. at 225. The Court ultimately determined that the Government failed to demonstrate that the defendant's decision to testify at his first trial was not motivated by the introduction of the illegally obtained confessions and, therefore, reversed the defendant's conviction. Id. at 224-26.

The instant case is factually distinguishable from Harrison. The issue in Harrison was

based on illegally obtained confessions that, the admission of which, induced that defendant to testify in an effort to rebut the damaging statements. Here, the Petitioner alleges that he was induced to testify because the trial court wrongfully precluded cross-examination of the victim regarding a false report of sex abuse against her brother. However, unlike in Harrison, there was no illegal evidence admitted in the instant case that impelled the Petitioner to testify.[5] Further, the trial court's exclusion of an inquiry into J.P.'s prior allegation of abuse on cross-examination, albeit improper, did not necessitate the Petitioner's testimony to rebut damaging statements made against him.

We also note that, at the post-conviction hearing, the Petitioner stated that his reason for testifying was two-fold: to attempt to get the excluded evidence in and to get "his denials" to the jury. Both trial counsel and the Petitioner believed that admission of the redacted statement would be a way for the Petitioner to get his denials to the jury without being subjected to cross-examination. Despite the Petitioner's inability to "open the door" and testify about J.P.'s previous allegation, this was a tactical decision, and it is entitled to deference. Thus, for the foregoing reasons, we conclude that trial counsel was not deficient for failing to object to the admission of the Petitioner's redacted testimony from the first trial.

*C. Counsel's Failure to Request a Severance of the Domestic Violence Offense from the Sex Abuse Counts*

Tennessee Rule of Criminal Procedure 8(b) provides that "[t]wo or more offenses may be joined in the same indictment" if the offenses are either (1) "parts of a common scheme or plan" or (2) "of the same or similar character." However, Rule 14(b)(1) provides that if "two or more offenses are joined ... pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others." Once a defendant files a Rule 14(b)(1) severance motion, the trial court must sever the offenses unless it can

> conclude from the evidence and arguments presented at the hearing that: (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of [one] offense is relevant to some material issue in the trial of all the other offenses; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant.

State v. Garrett, 331 S.W.3d 392, 403 (Tenn. 2011) (quoting Spicer v. State, 12 S.W.3d 438,

---

[5] Harrison has never been applied to the exclusion of evidence, and it cannot be extended here.

445 (Tenn. 2000)).

As our supreme court has previously stated, "a common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." State v. Moore, 6 S.W.3d 235, 240 n .7 (Tenn.1999). For offenses to be considered part of a continuing scheme or plan, the crimes must be directed toward a "common goal or purpose." State v. Denton, 149 S.W.3d 1, 15 (Tenn. 2004) (quoting State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995)) (quotation marks omitted). This "requires proof of 'a working plan, operating towards the future with such force as to make probable the crime for which the defendant is on trial.'" State v. Allen Prentice Blye, No. E2001-01375-CCA-R3-CD, 2002 WL 31487524, at *5 (Tenn. Crim. App. Nov. 1, 2002) (quoting Hoyt, 928 S.W.2d at 943).

We agree that if a motion for severance had been filed, the trial court probably would have granted the motion because the domestic violence offense was committed on a different day than the remaining counts in the indictment, involved a different victim, and does not appear to have otherwise been a part of a common scheme or plan. However, trial counsel testified that not filing a severance motion was a tactical strategy because keeping the counts together supported their theory that the alleged domestic assault of E.P. was "her motivation for planting the sex abuse seed in the child." The post-conviction court credited trial counsel's testimony and "defer[red] to [the] strategy and tactical choice of counsel[.]" The record supports trial counsel's testimony that his failure to file a severance motion was a tactical strategy, and the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Cooper, 847 S.W.2d at 528. As such, the Petitioner is not entitled to relief on this issue.

## D. Counsel's Failure to Object to the Jury Instruction on Flight

In criminal cases, the trial court has the duty to charge the jury on all of the law that applies to the facts of the case. See State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992) (citing State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975)). The defendant also "has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge." Thompson, 519 S.W.2d at 792. An erroneous jury instruction may deprive the defendant of the constitutional right to a jury trial. See State v. Garrison, 40 S.W.3d 426, 433-34 (Tenn. 2000). A jury instruction must be reviewed in its entirety and read as a whole rather than in isolation. State v. Leach, 148 S.W.3d 42, 58 (Tenn. 2004). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005) (citing State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998)).

The post-conviction court found that trial counsel was not deficient for failing to object to a flight instruction because the issue of flight was fairly raised by the evidence. The Petitioner admits that he left the state after the domestic assault arose and concedes that the flight instruction would be proper regarding that offense. However, he contends that this instruction allowed the jury to improperly infer that the Petitioner was also guilty of the sexual assault charges because the instruction was not specifically restricted to the domestic assault charge. As previously mentioned, trial counsel made a strategic decision not to sever the cases, with the Petitioner's assent, and this decision resulted in all of the offenses being tried together. Because the pattern jury instruction on flight is general and the issue of flight was fairly raised by the evidence, even if trial counsel had objected to the instruction, it is highly unlikely that such an objection would have been sustained.[6] Therefore, trial counsel was not deficient for failing to object to the flight instruction.

## CONCLUSION

Based on our review of the record and the applicable law, we affirm the judgment of the post-conviction court denying relief.

_____
D. KELLY THOMAS, JR., JUDGE

---

[6] The post-conviction court noted that there was sufficient evidence because all the counts were tried together, and "testimony from other witnesses indicated Petitioner was aware of the sexual assault allegations."